IN THE MATTER OF THE APPLICATION OF MARIA MARTIN, MARTHA STRETTON, ALDONA MIDDLESWORTH AND JOSEPH PALLONE, FOR RELIEF.

Argued January 11, 1982—Decided June 30, 1982.

300

302

*Arlene Gilbert Groch* argued the cause for appellants Maria Martin, et al. (*Arlene Gilbert Groch*, attorney; *Arlene Gilbert Groch, Sonia G. Wagner, David G. Sciarra* and *Jack E. Granzow*, on the briefs).

*Thomas N. Auriemma*, Senior Assistant Counsel, argued the cause for intervenor-respondent Casino Control Commission (*R. Benjamin Cohen*, General Counsel, attorney; *Robert J. Genatt*, Senior Assistant Counsel, of counsel).

*Guy S. Michael*, Deputy Director, argued the cause for respondent Department of Law & Public Safety, Division of Gaming Enforcement (*James R. Zazzali*, Attorney General of New Jersey, attorney; *Raymond J. Marquez*, Deputy Attorney General, on the brief).

The opinion of the Court was delivered by

PASHMAN, J.

This case involves a classic confrontation between the power of the State to protect the public through regulation of a highly sensitive industry and the right of individuals thus regulated to be free from unreasonable governmental intrusion into their private lives. Appellants are applicants for licenses to become non-supervisory casino employees. They challenge certain provisions of the Casino Control Act, *N.J.S.A.* 5:12-1 to -152, as well as certain questions that applicants are required to answer in order to apply for a casino employee license. They assert that various constitutional and statutory rights have been invaded by the comprehensive licensing scheme, including the rights of privacy, freedom of association, freedom from unreasonable

searches and seizures and the privilege against self-incrimination.

While we uphold the constitutionality of the statute and the regulations promulgated under it, we note that the power of the State to condition casino employment on disclosure of personal information is not without constitutional limit. We therefore take this opportunity to establish guidelines for the Casino Control Commission (Commission) and the Division of Gaming Enforcement (Division) in exercising their statutory power. The goal is an accommodation between the legislative purpose of protection of the public through strict regulation of casino gambling and the legitimate interests of individuals in freedom from unnecessary incursions into their private lives.

I

FACTS AND PROCEDURAL HISTORY

The Casino Control Act prohibits persons from working as casino employees in Atlantic City unless they have first obtained a valid casino employee license. *N.J.S.A.* 5:12–90(a). On April 14, 1978, Martha Stretton submitted an application form to the Casino Control Commission to obtain such a license. She sought employment as a dealer in a casino hotel in Atlantic City. On April 21, 1978, Maria Martin similarly submitted an application form for a casino employee license to work as a casino dealer.

Both Stretton and Martin refused to answer a number of questions on the application form then used by the Commission pursuant to *N.J.S.A.* 5:12–70(a) and *N.J.A.C.* 19:41–7.14.[1] In addition, both Martin and Stretton refused to sign a consent to searches, inspections and seizures. They also sought to limit the scope of the release authorization that empowered various institutions to release to the Division or the Commission confidential

---

[1]The form in use at that time was Personal History Disclosure Form 2 (PHDF–2). It has since been replaced by form 2A (PHDF–2A). This form follows the opinion as an Appendix.

information concerning the applicants. Finally, they objected to a waiver of liability that purported to relinquish any rights against the State for disclosures of confidential information acquired by the State in the course of the investigation of the applicant other than wilfully unlawful disclosures. With their forms they submitted a list of reasons why they did not respond to the questions.

Joseph Lordi, the Chairman of the Commission, advised Martin and Stretton that he could not accept their applications for filing since they were incomplete. *N.J.A.C.* 19:41–8.2 and –8.3. He advised them of their right to a hearing if they contested the decision. On May 3, 1978, Martin and Stretton requested an administrative hearing.[2]

On May 25, 1978, the Commission and the Division were served with a complaint,[3] which sought a temporary restraint against the Commission from requiring the applicants to complete the form in order to receive licenses and a declaratory judgment that certain statutory provisions regarding licensing were unconstitutional. Plaintiffs Martin and Stretton were joined by additional plaintiffs Joseph Pallone and Aldona Middlesworth.[4] Middlesworth alleged that she had decided not to apply for a license upon learning of the form she would have to fill out. Pallone alleged that, as the spouse of an applicant, he was subject to unconsented searches and disclosures of personal information. The complaint alleged that the statute and application form violated the constitutional rights of freedom of association, privacy, due process, freedom from unreasonable

---

[2]On May 22, 1978, both Martin and Stretton graduated from Resorts International Dealers School after having completed the prescribed course of study as casino dealers specializing in the game of blackjack.

[3]*Martin, et al. v. State of New Jersey, et al.* (Appellate Division Docket No. A–3765–77).

[4]John B. Kiniry and Atlantic Industrial Hardware Co., Inc. were also joined as plaintiffs in that suit. They later withdrew from the administrative proceedings and are not parties to this case.

searches and seizures, and the privilege against self-incrimination.

On May 27, 1978, the Appellate Division denied emergent relief. The parties then agreed to dismiss the action and pursue the matter in a hearing before the Commission. On June 9, 1978, the additional plaintiffs in the dismissed court case requested that the Commission include them as parties in the administrative proceedings.

After a pre-hearing conference on June 15, 1978, an order was issued on June 16 by the hearing examiner outlining the issues to be addressed at the hearing. The order further stated that the hearing examiner would treat the challenges to the questions as petitions requesting the Commission to amend or repeal a regulation. *N.J.S.A.* 5:12–69(c). The order indicated that the experience of the Division had led it to conclude that certain questions on the existing form were not essential and others could be modified. After the pre-hearing order, the hearing examiner granted a request by appellants to enlarge the list of challenged items to 27 out of the 55 questions on the form.

On July 28, 1978, applicant Stretton decided to complete the form. After doing so, she was investigated by the Division, licensed by the Commission and hired by Resorts International. Martin has never completed the application form.

The hearing was held between July 31 and August 8, 1979, before Hearing Examiner R. Benjamin Cohen.[5] On June 16, 1980, the hearing examiner filed a 200-page Report and Recommendation with the Commission. The examiner found that Martin had standing as an "interested person" under *N.J.S.A.*

---

[5] A motion by appellants for leave to appeal the examiner's decision not to recuse himself was denied by the Appellate Division on January 22, 1979. Cohen had been General Counsel to the Commission and had represented it in the dismissed proceedings before the Appellate Division.

5:12–69(c) to seek repeal or amendment of the application form.[6] The examiner further held that the challenged questions did not violate the constitutional rights of freedom of association, privacy, freedom from unreasonable searches and seizures, or the privilege against self-incrimination. Nonetheless, the examiner did recommend that parts of the forms be revised to eliminate or narrow the scope of certain questions.

On August 7, 1980, the report was adopted by the Casino Control Commission at a public hearing. A final order to that effect was issued by the Commission on August 14, 1980. The order stated that the petition to amend the form was denied except to the extent of the hearing officer's recommendations. The order further stated that the Commission and the Division would review the application forms to determine whether other changes could be made without impairing the investigative process.

On December 22, 1981, pursuant to the Commission order mandating the use of forms that minimized invasion of applicants' interests, the Commission authorized for publication a new Personal History Disclosure Form, PHDF–2A. Published in accord with the procedures for adoption of a new regulation under the Administrative Procedure Act, *N.J.S.A.* 52:14B–1 to –15, the new form omits most of the questions challenged by appellants. It was adopted for use by the Commission on June 1, 1982. Although most of the questions challenged by appellants have thus been eliminated from use by the Commission, appellants continue to argue that various provisions of the Casino Control Act violate several of their constitutional and statutory rights.

On September 29, 1980, appellants filed a notice of appeal with the Appellate Division. The Commission intervened in the

---

[6]He found that it was unnecessary to determine whether Pallone and Stretton had standing since they raised objections identical to those encompassed by Martin's claims. He held that Middlesworth did not have standing since she had not filed an application for a license.

appeal. We granted direct certification on July 7, 1981. *R.* 2:12–1.

## II

## STANDING

■ As a preliminary matter, we must determine whether any of the appellants has standing to challenge the constitutionality of the challenged provisions of the Casino Control Act. To challenge the constitutionality of a statute, plaintiffs must demonstrate either that they have been injured by enforcement of the statute or that the statute substantially deters their constitutionally protected activity, *N. J. State Chamber of Commerce v. N. J. Elec. Law Enforce. Comm'n*, 82 *N.J.* 57, 66–67 (1980). .The challenger must have suffered a "cognizable measure of harm to protectable interests," *id.* at 67; *see also Home Builders League of South Jersey, Inc. v. Berlin Tp.*, 81 *N.J.* 127, 134–35 (1979).

■ Martin was denied a license because she refused to complete the application form. She asserts that this denial is the result of her refusal to surrender protected constitutional rights by responding to questions which impermissibly infringe on those rights. We are satisfied that license denial constitutes a "sufficient stake and real adverseness" with respect to the subject matter of the litigation, *Crescent Park Tenants Ass'n v. Realty Equities Corp.*, 58 *N.J.* 98, 107 (1971); *see also Salorio v. Glaser*, 82 *N.J.* 482, 490–91, *cert.* den. 449 *U.S.* 874, 101 *S.Ct.* 215, 66 *L.Ed.*2d 94, app. dism. 449 *U.S.* 804, 101 *S.Ct.* 49, 66 *L.Ed.*2d 7 (1980). As a general matter, Martin has standing to challenge the constitutionality of the questions on the application form.[7] Since the issues raised by the other appellants are identical to

---

[7]Although Martin generally has standing to bring this appeal, she and the other appellants may lack standing to challenge the questions on specific constitutional grounds. Different constitutional rights may require different conclusions on appellants' standing. We address these issues *infra*.

those raised by Martin, it is unnecessary for us to address their standing.

The Division of Gaming Enforcement contends, however, that this Court should address only the constitutionality of the application forms challenged at the hearing and not the constitutionality of the Casino Control Act itself. The Division argues that in an appeal of an administrative decision, the Court is limited to the issues decided by the agency. The Casino Control Commission merely adopted the hearing examiner's report, which did not address the constitutionality of the statute itself.

We disagree. In deciding whether to amend the forms, the hearing examiner discussed both the statute and the relevant constitutional law. He observed that statutes should be construed in a manner that renders them constitutional if they are reasonably susceptible to such an interpretation. *See State v. Profaci*, 56 *N.J.* 346, 350 (1970); *Woodhouse v. Woodhouse*, 17 *N.J.* 409, 416 (1955). Moreover, the application forms were adopted pursuant to administrative regulation, *N.J.A.C.* 19:41–7.14. They were designed to elicit information sufficient to determine an applicant's qualifications for a license. The standards for qualifications, *N.J.A.C.* 19:41–4.1 to –4.5, explicitly incorporate the various statutory provisions challenged by appellants. Thus in many cases the constitutionality of part of the statute would be in doubt if appellants' constitutional challenge to items on the forms were successful. Conversely, if the statute is unconstitutional, the questions promulgated under its authority must also fail. We decline to address the constitutionality of the forms in a statutory vacuum.

Finally, we note that many of appellants' challenges have become moot since the litigation began. With the adoption of the new form, PHDF–2A, on June 1, 1982, most of the challenged questions have been eliminated from use. We therefore do not address the constitutionality of those specific questions. *See Oxfeld v. N. J. State Board of Education*, 68 *N.J.* 301 (1975). However, appellants continue to challenge the statutory criteria

on which the forms are based. Moreover, they challenge the validity of other provisions which remain on the forms such as the release authorization, the waiver of liability and the notification that searches on the casino premises are permitted by the statute. Because of the importance of the legal issues and the interests at stake on both sides, we take this opportunity to address the questions raised in the appeal.

## III

## SEARCH AND SEIZURE

■ Appellants contend that the Casino Control Act violates their constitutional right to be free from unreasonable governmental searches and seizures. *U.S.Const.*, Amend. IV; *N.J. Const.* (1947), Art. 1, ¶ 7. They claim that Sections 79 and 80 of the act, *N.J.S.A.* 5:12–79 and –80, give the Division of Gaming Enforcement power to conduct inspections and seizures far beyond constitutional limits. While none of appellants has been the victim of a search by the Division, the question of the constitutionality of the challenged statutory standards is ripe for decision. Stretton is currently licensed by the Commission and working in a casino facility. She is thus subject to the searches authorized by the statute. A licensee need not wait to be searched to challenge the constitutionality of the statute on its face.

Appellants challenge four facets of the statute. First, they challenge the constitutionality of the requirement that applicants and licensees consent to inspections, searches and seizures. *N.J.S.A.* 5:12–80(c). Second, they challenge the statutory authorization of warrantless searches under *N.J.S.A.* 5:12–79(a)(6). Third, they claim that the statute unconstitutionally allows administrative searches of non-regulated premises. *N.J.S.A.* 5:12–79(c). Fourth, they challenge the adequacy of the probable cause showing required to obtain an administrative warrant. *N.J.S.A.* 5:12–79(d)(1).

The first challenge concerns *N.J.S.A.* 5:12–80(c). That section provides:

All applicants, licensees, registrants, intermediary companies, and holding companies shall consent to inspections, searches and seizures and the supplying of handwriting exemplars as authorized by this act and regulations promulgated hereunder.

Appellants contend that the statute unconstitutionally coerces applicants and licensees to consent to otherwise unlawful searches and seizures. However, they misconstrue the purpose of the challenged provision, *N.J.S.A.* 5:12–80(c). Section 79 gives the Division certain powers to conduct searches and seizures. *N.J.S.A.* 5:12–79. The purpose of Section 80(c) is not to expand the scope of searches otherwise allowable under Section 79. Section 80(c) merely requires applicants and licensees to submit to searches and seizures "as authorized by this act and regulations promulgated [t]hereunder." *N.J.S.A.* 5:12–80(c). The section merely places a legal duty on applicants and licensees not to resist lawful searches otherwise authorized by Section 79 or regulations promulgated pursuant to it. For this reason, appellants are incorrect in their claim that the statute coerces consent to otherwise unlawful searches. *See State v. Williams*, 84 *N.J.* 217, 226–27 (1980). It merely mandates submission to *lawful* searches.

The Commission has acted in accord with this interpretation of the statute by deleting the challenged portion of the application form that required applicants to sign a "consent to searches, inspections and seizures." Such a requirement may have erroneously created the impression that applicants were being coerced to waive their Fourth Amendment rights. The current form merely informs applicants that licensees are subject to certain warrantless searches while on the licensed casino premises.[8] It properly notifies applicants that once they are licensed, they will be legally required to submit to searches above and beyond those

---

[8]The PHDF–2A form states: "Pursuant to Sections 79(a)(6) and 80 of the Casino Control Act, any person who applies for and obtains a license from the Commission is required to submit to warrantless searches when present in a licensed casino hotel facility."

to which they would have been subject had they not been licensed.

■ We conclude that neither the notice on the form nor *N.J.S.A.* 5:12–80(c) coerces applicants to consent to otherwise unlawful searches.

■ Second, applicants challenge the statutory authorization of warrantless searches in the casino facility under *N.J.S.A.* 5:12–79(a)(6). That section provides:

> The division and its employees and agents, upon approval of the director, shall have the authority, without notice and without warrant ... [t]o inspect the person, and personal effects present in a casino facility licensed under this act, of any holder of a license issued pursuant to this act while that person is present in a licensed casino facility.

The Division is thus empowered by statute to conduct warrantless searches of a licensee or her personal effects while she is in a licensed casino facility. Such searches may occur only with the approval of the director, *N.J.S.A.* 5:12–79(a), or the owner or operator in charge of the controlled premises, *N.J.S.A.* 5:12–79(f)(1). The freedom to conduct such searches is limited by constitutional requirements, *N.J.S.A.* 5:12–79(b). Licensees are obligated to submit to such searches under *N.J.S.A.* 5:12–80(c).

The United States Supreme Court has stated that the "basic purpose of [the Fourth Amendment] is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." *Marshall v. Barlow's, Inc.*, 436 *U.S.* 307, 312, 98 *S.Ct.* 1816, 1820, 56 *L.Ed.2d* 305, 311 (1978); *Camara v. Municipal Court of San Francisco*, 387 *U.S.* 523, 528, 87 *S.Ct.* 1727, 1730, 18 *L.Ed.2d* 930, 935 (1967). The Supreme Court has held that except in certain carefully defined classes of cases the states may not conduct administrative searches of private property without a warrant. *Marshall v. Barlow's*, 436 *U.S.* at 312–13, 98 *S.Ct.* at 1820, 56 *L.Ed.2d* at 311–12; *Camara v. Municipal Court of San Francisco*, 387 *U.S.* at 528–29, 534, 87 *S.Ct.* at 1730–31, 1733, 18 *L.Ed.2d* at 935–36, 938.

An exception has been recognized for "pervasively regulated" businesses, *United States v. Biswell*, 406 *U.S.* 311, 316, 92 *S.Ct.*

1593, 1596, 32 *L.Ed.2d* 87, 92–93 (1972) (firearms), or industries "long subject to close supervision and inspection," *Colonnade Catering Corp. v. U.S.*, 397 *U.S.* 72, 77, 90 *S.Ct.* 774, 777, 25 *L.Ed.* 2d 60, 65 (1970) (liquor). *See Marshall v. Barlow's*, 436 *U.S.* at 313, 98 *S.Ct.* at 1820, 56 *L.Ed.2d* at 311–12; *State v. Williams*, 84 *N.J.* at 223–25 (liquor); *State v. Dolce*, 178 *N.J.Super.* 275, 283–85 (App.Div.1981) (horse racing). The United States Supreme Court has decided that

> Certain industries have such a history of government oversight that no reasonable expectation of privacy ... could exist for a proprietor over the stock of such an enterprise ... [W]hen an entrepreneur embarks upon such a business, he [or she] has voluntarily chosen to subject himself [or herself] to a full arsenal of governmental regulation. [*Marshall v. Barlow's*, 436 *U.S.* at 313, 98 *S.Ct.* at 1821, 56 *L.Ed.2d* at 312 (citations omitted)]

It cannot be denied that casino gambling in New Jersey is a pervasively regulated industry that is subject to close supervision and inspection. *See Knight v. Margate*, 86 *N.J.* 374, 381–82 (1981); *In the Matter of Boardwalk Regency Casino License Application*, 180 *N.J.Super.* 324, 341 (App.Div.1981), aff'd and modified, 90 *N.J.* 361 (1982). Appellants' reliance on *State v. Williams, supra,* is misplaced. In that case, we held that a warrantless search of a tavern was unconstitutional because the statute authorizing alcoholic beverage control regulatory searches, *N.J.S.A.* 33:1–35, did not provide statutory authority for such searches without specific authorization from the local ABC board. 84 *N.J.* at 226. Here, on the other hand, there can be no question that the governing statute clearly authorizes warrantless searches by the Division upon approval of the director. *N.J.S.A.* 5:12–79(a). *See State v. Dolce*, 178 *N.J.Super.* at 285 (upholding a warrantless search authorized by administrative regulation).

Appellants further argue that the applicable precedents have gone only so far as to authorize warrantless searches of regulated property, but have not authorized warrantless searches of persons on the regulated property. *See, e.g., Marshall v. Barlow's*, 436 *U.S.* at 313, 98 *S.Ct.* at 1820, 56 *L.Ed.2d* at 312. Nonetheless, the policy considerations behind the exception to

the warrant requirement are equally applicable to searches of licensed persons while they are on regulated business premises. The expectation of privacy in such circumstances is limited, particularly where the applicant has been notified prior to licensing that she will be subject to warrantless searches in the casino facility. Moreover, the ability to conduct such searches is necessary to deter many offenses or violations that might otherwise be virtually undetectable.

We therefore uphold the constitutionality of the statutory provisions allowing the Division to conduct warrantless searches of licensees and their personal effects in the casino facility. *N.J.S.A.* 5:12–79(a)(6).[9]

Appellants' third contention is that the Casino Control Act unconstitutionally permits administrative searches of non-regulated premises. Essentially, they claim that the language of *N.J.S.A.* 5:12–79 is so broad that it authorizes searches outside the casino facility, such as searches of a casino employee's home. *See, e.g., N.J.S.A.* 5:12–79(c) & (e).

This is an incorrect reading of the statute. Section 79(a) permits warrantless searches only of

"premises wherein casino gaming is conducted; or gaming devices or equipment are manufactured, sold, distributed, or serviced; or wherein any records of such activities are prepared or maintained . . ." [*N.J.S.A.* 5:12–79(a)(1)]

Warrantless searches on any other premises are not authorized. As a practical matter, appellants, who are not involved in the manufacture of gaming equipment or record-keeping, will be subject to warrantless searches only while in a licensed casino facility.

---

[9]We note that such warrantless searches are themselves subject to the independent constitutional requirement of reasonableness. *N.J.S.A.* 5:12–79(b); *see, e.g., Marshall v. Barlow's,* 436 *U.S.* at 312, 98 *S.Ct.* at 1820, 56 *L.Ed.*2d at 311. They must be conducted in a manner that furthers the regulatory purposes of the Casino Control Act. We need not address the specific limits of the search and seizure power granted by *N.J.S.A.* 5:12–79(a)(6), particularly since no search is being challenged as unreasonable. Whether a search has been conducted in an unreasonable manner is a matter to be determined in the light of the circumstances of the particular case.

Moreover, the statutory provisions for searches pursuant to administrative warrant, *N.J.S.A.* 5:12–79(c), (d) & (e), do not empower the Division to search the homes of casino employees. The statute requires the administrative warrant to "be served during normal business hours of the licensee." *N.J.S.A.* 5:12–79(d)(2). By implication, this provision limits searches pursuant to administrative warrant to the regulated business premises of casino service industries licensed under *N.J.S.A.* 5:12–92.

We conclude that the statute does not authorize the Division to conduct searches of casino employees' homes with or without an administrative warrant. Neither does the statute authorize administrative searches anywhere outside the regulated premises of a casino facility or a business licensee. Since appellants are not vulnerable to such searches, their constitutional challenge is without merit.

Appellants' fourth and final objection to *N.J.S.A.* 5:12–79 challenges the probable cause showing required to obtain an administrative warrant from a judge under *N.J.S.A.* 5:12–79(d)(1).

In the criminal context, a warrant may be issued only on a probable cause showing that would lead a reasonable person to believe that a crime has been committed and that evidence of that crime will be found in a particular place. *Henry v. United States*, 361 *U.S.* 98, 102, 80 *S.Ct.* 168, 171, 4 *L.Ed.*2d 134, 138 (1959). However, the probable cause showing necessary to obtain an administrative warrant is less stringent. Searches pursuant to administrative warrants are conducted to enforce regulatory statutes, rather than to investigate criminal activity. Experience has demonstrated the utility of periodic inspections in promoting compliance with regulatory statutes. *See, e.g., Camara v. Municipal Court*, 387 *U.S.* at 538, 87 *S.Ct.* at 1735, 18 *L.Ed.*2d at 940. In such cases, probable cause in the criminal sense is not constitutionally required. For purposes of an administrative search, probable cause justifying the issuance of a warrant may be based on "reasonable legislative or adminis-

trative standards for conducting an ... inspection." *Marshall v. Barlow's*, 436 *U.S.* at 320–21, 98 *S.Ct.* at 1824, 56 *L.Ed.*2d at 316 (holding that OSHA inspections were constitutionally permissible pursuant to administrative warrants based on less than criminal probable cause); *Camara v. Municipal Court of San Francisco*, 387 *U.S.* at 538, 87 *S.Ct.* at 1735, 18 *L.Ed.*2d at 940–41.

■ The Casino Control Act provides a reasonable standard for issuance of an administrative warrant. A judge may issue such a warrant only on a probable cause showing of

a valid public interest in the effective enforcement of the act or regulations sufficient to justify administrative inspection of the area, premises, building or conveyance in the circumstances specified in the application for the warrant. [*N.J.S.A.* 5:12–79(d)(1)]

This section clearly requires a showing of a valid public interest in enforcement of the act sufficient to justify the judge's issuance of the warrant. Such a requirement meets the constitutional standard for protection against unreasonable searches and seizures.

In sum, we uphold the constitutionality of the challenged statutory provisions at *N.J.S.A.* 5:12–79 and –80(c), as well as the notification on the application form that licensees are subject to certain searches in the casino facility.

IV

RIGHT OF PRIVACY

Appellants contend that conditioning license application on the disclosure of personal information to the government impermissibly infringes on their constitutional right of privacy. Their claim is two-fold. First, they assert that certain information is so personal that no one should be required to disclose it to the state in order to receive a government benefit. Second, they contend that even though the state may constitutionally require certain disclosures to the government, it may not do so unless it has taken adequate steps to ensure that private information so acquired will not be disclosed to the public.

In *Whalen v. Roe*, the United States Supreme Court recognized that the Constitution grants protection to the "individual interest in avoiding disclosure of personal matters...." 429 *U.S.* 589, 599–600, 606, 97 *S.Ct.* 869, 876–877, 879, 51 *L.Ed.2d* 64, 73, 77 (1977). That case involved a challenge to a New York statute requiring pharmacists or physicians who dispense certain drugs to report the name and address of the patient to a central state office. *Id.* at 593, 97 *S.Ct.* at 873, 51 *L.Ed.2d* at 69. The court upheld the statutory reporting requirements on the grounds that they were rationally related to a legitimate government law enforcement purpose and that the individual interest in non-disclosure was adequately protected by strict statutory procedures safeguarding the information against further disclosure. *Id.* at 593–94, 597–98, 601, 603–04, 97 *S.Ct.* at 873, 875, 877, 878–79, 51 *L.Ed.2d* at 70, 72, 74, 76; *id.* at 607, 97 *S.Ct.* at 880, 51 *L.Ed.2d* at 78 (Brennan, J., concurring).[10]

The United States Supreme Court further developed the confidentiality strand of privacy law in *Nixon v. Administrator of General Services*, 433 *U.S.* 425, 97 *S.Ct.* 2777, 53 *L.Ed.2d* 867 (1977). The Court decided that the government had the constitutional power to compel former President Nixon to turn over all of his presidential papers, including personal papers, to government archivists under the Presidential Recordings and Material Preservation Act, 44 *U.S.C.* § 2107 note. The Supreme Court held that "any intrusion [on the individual interest in non-disclosure] must be weighed against the public interest in subjecting the Presidential materials of appellant's administra-

---

[10]The statutory safeguards in *Whalen* included (1) provision for storing the records in a locked vault; (2) a receiving room surrounded by a locked wire fence and protected by an alarm system; (3) keeping the computer tapes on which the information was stored in a locked cabinet; (4) using the computer in such a way that no terminal outside of the computer room could read or record any of the information; (5) destroying the records after a five year period; (6) an express prohibition in the statute against public disclosure; (7) making wilful violation of the privacy safeguards a crime punishable by up to one year in prison and a $2,000 fine. 429 *U.S.* at 593–95, 97 *S.Ct.* at 873–84, 51 *L.Ed.2d* at 70.

tion to archival screening." *Id.* at 458, 97 *S.Ct.* at 2797, 53 *L.Ed.* 2d at 900–01. As with *Whalen v. Roe,* the extent of the intrusion on the individual interest was judged in light of the statutory safeguards against disclosure. *Id.* at 458–59, 465, 97 *S.Ct.* at 2797–98, 2801, 53 *L.Ed.2d* at 901, 905. The Supreme Court emphasized that the underlying statute mandated regulations aimed at "preventing undue dissemination of private materials . . ." *Id.* at 458–59, 465, 97 *S.Ct.* at 2797–98, 2801, 53 *L.Ed.* 2d at 901, 905; 44 *U.S.C.* § 2107 note, §§ 103, 104(a)(5), 104(a)(7).

Several federal courts have since explained that the government has the constitutional power to compel disclosure of private information to the state when the governmental interest in the information outweighs the individual interest in non-disclosure. *Plante v. Gonzalez,* 575 *F.2d* 1119, 1134 (5th Cir. 1978), *cert. den.,* 439 *U.S.* 1129, 99 *S.Ct.* 1047, 59 *L.Ed.2d* 90 (1980); *Fadjo v. Coon,* 633 *F.2d* 1172, 1175–76 (5th Cir. 1981); *Hawaii Psychiatric Society v. Ariyoshi,* 481 *F.Supp.* 1028, 1043–44 (D.Haw.1979).

This Court has similarly adopted a balancing test to resolve conflicts between governmental needs for information and an individual's right of confidentiality. *Lehrhaupt v. Flynn,* 140 *N.J.Super.* 250, 260–63 (App.Div.1976), aff'd o. b., 75 *N.J.* 459 (1978); *Kenny v. Byrne,* 144 *N.J.Super.* 243, 252–53 (App.Div. 1976), aff'd o. b., 75 *N.J.* 458 (1978). "The legitimate public interest must be considered . . . in balance with the competing right of privacy on the part of the affected individuals." *Lehrhaupt v. Flynn,* 140 *N.J.Super.* at 260. The Appellate Division held and we agree that

> even if the governmental purpose is legitimate and substantial . . . the invasion of the fundamental right of privacy must be minimized by utilizing the narrowest means which can be designed to achieve the public purpose. [*Lehrhaupt v. Flynn,* 140 *N.J.Super.* at 262, 264; *see Kenny v. Byrne,* 144 *N.J.Super.* at 253]

This requirement accords with the United States Supreme Court concern for adequate safeguards against public disclosure of private information in government hands when such disclosure is unnecessary to achieve the governmental purposes.

In this case there is a substantial government interest in strict regulation of casino gambling. Until 1976 all casino gambling in New Jersey was prohibited by the Constitution, *N.J.Const.* (1947), Art. 4, § 7, ¶ 2. At that time, the Constitution was amended to allow the Legislature to authorize casino gambling only in Atlantic City, *N.J.Const.* (1947), Art. 4, § 7, ¶ 2(D). Since it is generally constitutionally prohibited, there is a great public interest in regulating the gambling that does exist. The constitution explicitly provides that gambling in Atlantic City "shall be ... under the regulation and control [of] the State..." *Id.*

Moreover, the Legislature has substantial power to regulate non-essential, dangerous and sensitive industries to protect the public safety and welfare. *Grand Union Co. v. Sills*, 43 *N.J.* 390, 398 (1964) (liquor); *Jersey Downs, Inc. v. Division of N.J. Racing Comm'n*, 102 *N.J.Super.* 451, 457 (App.Div.1968) (horse racing); *Niglio v. N.J. Racing Comm'n*, 158 *N.J.Super.* 182, 188 (App.Div.1978) (horse racing). "We see every reason ... for legalized casino gambling to take its deserved place among these industries." *In re Boardwalk Regency Casino Application*, 180 *N.J.Super.* at 341.

Pursuant to Art. 4, § 7, ¶ 2(D) of the State Constitution, the Legislature authorized casino gambling in Atlantic City in the Casino Control Act, *N.J.S.A.* 5:12–1 to –152. The act contains extensive, detailed regulation of every aspect of the industry. The Legislature explicitly stated that the public policy of the statute was: first, to ensure public trust in the credibility and integrity of the regulatory process, *N.J.S.A.* 5:12–1(b)(6); second, to exclude persons with criminal backgrounds and persons "deficient in business probity, ability or experience" from casino operations, *N.J.S.A.* 5:12–1(b)(7); third, to exercise regulatory and investigatory powers "to the fullest extent consistent with law" to avoid the entry into casino operations of persons whose economic or occupational pursuits violate the criminal or civil public policies of New Jersey, *N.J.S.A.* 5:12–1(b)(9); and

fourth, to prevent persons with "unacceptable backgrounds and records of behavior" from controlling casinos, *N.J.S.A.* 5:12–1(b)(15). *See Knight v. Margate*, 86 *N.J.* at 381–82. There is obviously a strong public interest in guarding against the danger of infiltration by organized crime. *In re Boardwalk Regency*, 180 *N.J.Super.* at 340.

The governmental interest in having applicants furnish information to the State in order to apply for a license is to enable the Commission and the Division to efficiently and effectively enforce the requirements of the Casino Control Act. The goal is to determine whether applicants conform to the statutory eligibility criteria for casino employees. The government has an interest in disclosure of the information only to the state officials charged with enforcing the statute. *See Lehrhaupt v. Flynn*, 140 *N.J.Super.* at 265.

In comparison with this strong public interest, the incursion on the applicant's privacy interests by the current questions on the application form, PHDF–2A, is minimal. None of the challenged questions on the form is so personal that applicants should be allowed to assert a right of "selective disclosure," as suggested by appellants in this case.[11] They concern predominantly information of public record, such as the applicant's business interests, prior arrests or convictions, participation in civil suits, automobile ownership, marital status, military record, former spouses and driver's license information.

In promulgating the current application form, PHDF–2A, the Commission reduced the amount of the personal information sought. In doing so, it acted in accord with the principle that "even though the governmental purpose be legitimate and substantial, that purpose cannot be pursued by means that broadly

---

[11]We explicitly do not reach the issue of whether there exists a category of information that is so sensitive that no applicant could be compelled to disclose it to the government regardless of the countervailing public interest and regardless of safeguards against public disclosure. The questions on the current form clearly do not reach that level of intimacy.

stifle fundamental personal liberties when the end can be more narrowly achieved." *Shelton v. Tucker,* 364 *U.S.* 479, 488, 81 *S.Ct.* 247, 252, 5 *L.Ed.*2d 231, 237 (1960); *Lehrhaupt v. Flynn,* 140 *N.J.Super.* at 262; *see Kenny v. Byrne,* 144 *N.J.Super.* at 253.

■ The Commission and the Division reviewed the forms in use at the time this litigation began. In doing so, they complied with the hearing examiner's recommendation that the forms be useful and effective in furthering the purposes of the Casino Control Act, while minimizing the intrusion on the "privacy and convenience of the applicant." After their study the Commission amended the forms in use, in light of the agencies' experience, to protect the privacy of applicants while retaining the questions that were deemed reasonably necessary for their investigation. This was altogether proper. By eliminating most of the challenged questions, the Commission and the Division have sought to accommodate the governmental need for disclosure of information by applicants and the individual interest in nondisclosure of personal materials. We conclude that the remaining disclosure requirements, in this context, do not violate applicants' right to privacy.

■ A different situation is presented by the release authorization, by which the applicant authorizes access by the Commission and the Division to confidential records held by various institutions such as courts, banks, employers, government agencies and educational institutions.[12] The information contained

---

[12]The Release Authorization on PHDF–2A states:

> To All Courts, Probation Departments, Selective Service Boards, Employers, Educational Institutions, Banks, Financial and Other Such Institutions, And All Governmental Agencies—federal, state and local, without exception, both foreign and domestic.

> I have authorized the New Jersey Casino Control Commission and the New Jersey Division of Gaming Enforcement to conduct a full investigation into my background and activities.

> Therefore, you are hereby authorized to release any and all information pertaining to me, documentary or otherwise, as requested by any employee

in the records of these institutions is likely to be at least as personal and perhaps more so than the information at issue in *Whalen* and *Nixon*. In light of the extraordinarily broad nature of the release authorization and the potential intimacy of the private information contained in these documents, we hold that in order for the release authorization to pass constitutional muster, the State must undertake adequate precautions to safeguard the material against disclosure to the public once it is in government hands. *See Whalen v. Roe*, 429 *U.S.* at 593–94, 597–98, 601, 603–04, 97 *S.Ct.* at 873, 875, 877, 878–79, 51 *L.Ed.2d* at 70, 72, 74, 76; *id.*, at 607, 97 *S.Ct.* at 880, 51 *L.Ed.2d* at 78 (Brennan, J., concurring); *Nixon v. Admin. of General Services*, 433 *U.S.* at 458–59, 465, 97 *S.Ct.* at 2797–98, 2801, 53 *L.Ed.2d* at 901, 905; *Lehrhaupt v. Flynn*, 140 *N.J.Super.* at 265. We therefore hold that the State has the constitutional power to condition license application on the applicants' signing the release authorization only if it has instituted adequate safeguards against public disclosure of confidential materials it obtains.

Appellants challenge the adequacy of the State's safeguards on four grounds. First, they contend that *N.J.S.A.* 5:12–74(e) gives the State permission to disclose publicly the confidential information in its possession. That section provides in part:

> All information and data pertaining to an applicant's criminal record, family, and background furnished to or obtained by the commission from any source shall be considered confidential and *may be withheld* in whole or in part, except that any information shall be released upon the lawful order of a court of competent jurisdiction or, with the approval of the Attorney General, to a duly authorized law·enforcement agency. [*N.J.S.A.* 5:12–74(e) (emphasis added)]

---

or agent of the Division of Gaming Enforcement or the Casino Control Commission, provided that he or she certifies to you that I have an application pending before the Casino Control Commission or that I am presently a licensee, registrant or person required to be qualified under the provisions of the Casino Control Act.

This authorization shall supercede and countermand any prior request or authorization to the contrary.

A photostatic copy of this authorization will be considered as effective and valid as the original.

Appellants claim that although the statute provides that the information "shall be considered confidential," it gives the Commission the power to release the information since it merely states that the information "may be withheld." They contend that the language implies that the Commission may also choose to release the data to the public.

Contrary to appellants' claim, we find that the section provides clear evidence of a legislative intent to prevent public disclosure of the private materials. Moreover, the report adopted by the Commission interpreted Section 74(e) as mandatory, allowing disclosure only under the circumstances specified in the statute. In light of the constitutional requirements of confidentiality and the absence of any substantial governmental interest in public disclosure of the information, we affirm the Commission's holding that the State must keep the acquired information confidential, subject only to the specific exceptions noted in *N.J.S.A.* 5:12–74(e) itself.

Appellants' second objection to the safeguards rests on *N.J.S.A.* 5:12–74(f). That section provides:

Notice of the contents of any information or data released, except to a duly authorized law enforcement agency pursuant to subsection d or e of this section, *may be given* to any applicant or licensee in a manner prescribed by the rules and regulations adopted by the commission. [*N.J.S.A.* 5:12–74(f) (emphasis added)]

Again, in light of the confidentiality interest, we hold that, under this section, the State *must* notify any applicant or licensee of any release of information that may occur, other than disclosures to law enforcement agencies. While we have determined that such information shall remain confidential, any failure in the security system that results in unlawful release of the information should be followed by notification to the affected party. If adequate safeguards are instituted to keep the information confidential, such releases will be extremely rare, and the burden on the State minimal.

Third, appellants claim that the waiver of liability removes any incentive for the State to maintain confidentiality.

The waiver of liability in the application form is mandated by *N.J.S.A.* 5:12–80(b) which provides in part:

All applicants and licensees shall waive liability as to the State of New Jersey, and its instrumentalities and agents, for any damages resulting from any disclosure or publication in any manner, other than a willfully unlawful disclosure or publication, of any material or information acquired during inquiries, investigations or hearings.

We do not agree with appellants that immunity from civil suits gives Commission employees license to violate the confidentiality requirements of *N.J.S.A.* 5:12–74(e). We have held that the Commission must promulgate regulations to ensure the adequate safeguarding of confidential information if it intends to require applicants to sign the release authorization. *See infra* at 324–325. We must assume that Commission employees will be conscientious in obeying these regulations, and that the Commission will sanction those employees who neglect their duties. Civil remedies for negligent disclosure are far from the most important means of ensuring that information in the government's control will be kept confidential.

Appellants' fourth and final objection to the record-keeping practices of the Commission and the Division is that they do not in fact use procedures designed to prevent the unauthorized disclosure of the private materials in their possession. We note that no specific allegation of any unauthorized public disclosure has been made. Nonetheless, we agree that applicants and licensees have a statutory right to adequate safeguards specifically designed to prevent the negligent or unauthorized disclosure of confidential information.

On the basis of this record, we find no assurance that the Commissioner and the Division have instituted adequate procedures to prevent disclosure of the confidential information. The agencies involved expressed concern for confidentiality and we have no criticism of their conduct. However, this is not sufficient protection for the applicants' privacy. To guarantee confidentiality, the Commission must promulgate regulations under the Administrative Procedure Act, *N.J.S.A.* 52:14B–1 to –15, designed to provide such safeguards. The regulations should

include guidelines on the storage of information and access to it, including the circumstances under which files may be removed from government offices. They should recognize the practical needs of investigators and employees in using the information, while providing for its secure storage and handling. The regulations should also address the length of time during which the information will be preserved.

We hold that the challenged statutory provisions on which the application forms are based do not violate appellants' rights of privacy.[13] However, we also hold that the Commission may not constitutionally condition license application on signing the release authorization unless it has provided for adequate safeguards to preserve the confidentiality of applicants' records.

V

## FREEDOM OF ASSOCIATION

The First and Fourteenth Amendments to the Constitution protect the individual interest in freedom of association. The State is substantially limited in the extent to which it may impinge on this legally protected interest. *NAACP v. Alabama*, 357 *U.S.* 449, 460, 78 *S.Ct.* 1163, 1170, 2 *L.Ed.*2d 1488, 1498 (1958). The right of association is a "basic constitutional freedom . . . which, like free speech, lies at the foundation of a free society." *Buckley v. Valeo*, 424 *U.S.* 1, 25, 96 *S.Ct.* 612, 637, 46 *L.Ed.*2d 659, 691 (1976); *Shelton v. Tucker*, 364 *U.S.* at 486, 81 *S.Ct.* at 251, 5 *L.Ed.*2d at 236. The constitutional liberty to freely associate with others extends not merely to associations designed to advance beliefs and ideas, *NAACP v. Alabama*, 357

---

[13]The challenged statutory provisions include: *N.J.S.A.* 5:12–86 (disqualifying persons who have committed certain crimes); –89(b), –90(b), –91(b) (requiring the applicant to give certain information about her associates); –80(a) (placing the burden on the applicant to improve her qualifications); –80(b) (waiver of liability); –74(e) & (f) (confidentiality of records).

*U.S.* at 460–62, 78 *S.Ct.* at 1170–71, 2 *L.Ed.2d* at 1490–1500, but to political causes as well, *id.; Buckley v. Valeo,* 424 *U.S.* at 25, 96 *S.Ct.* at 637, 46 *L.Ed.2d* at 691; *Nixon v. Admin. of General Services,* 433 *U.S.* at 467–68, 97 *S.Ct.* at 2802–03, 53 *L.Ed.2d* at 906. It also encompasses associational ties designed to further the social, legal and economic benefit of the group's members, *Griswold v. Connecticut,* 381 *U.S.* 479, 483, 85 *S.Ct.* 1678, 1681, 14 *L.Ed.2d* 510, 514 (1965), and associations that promote a "way of life," *id.* at 485–86, 85 *S.Ct.* at 1682, 14 *L.Ed.2d* at 516.

State action that withholds a privilege from an individual because she has engaged in a protected association infringes on that constitutionally protected interest. The interest is also implicated if the state seeks to compel disclosures by group members that have the effect of deterring protected associational ties. *NAACP v. Alabama,* 357 *U.S.* at 460, 78 *S.Ct.* at 1170, 2 *L.Ed.2d* at 1498. The crucial factor in deciding whether the state action has invaded the interest is whether individuals are likely to be deterred from engaging in constitutionally protected associations. *In the Matter of Application of Stolar,* 401 *U.S.* 23, 27–28, 91 *S.Ct.* 713, 715, 716, 27 *L.Ed.2d* 657, 663 (1971); *Shelton v. Tucker,* 364 *U.S.* at 485–87, 81 *S.Ct.* at 250–51, 5 *L.Ed.2d* at 236.

Once it has been determined that a state action may "have the effect of curtailing the freedom to associate [it] is subject to the closest scrutiny." *NAACP v. Alabama,* 357 *U.S.* at 460–61, 78 *S.Ct.* at 1170–71, 2 *L.Ed.2d* at 1499; *Buckley v. Valeo,* 424 *U.S.* at 25, 96 *S.Ct.* at 637, 46 *L.Ed.2d* at 691. The interest in free association may be impeded by the state only if it has a conflicting interest sufficient to justify the deterrent effect on the free exercise of the constitutionally protected right. *NAACP v. Alabama,* 357 *U.S.* at 463, 78 *S.Ct.* at 1172, 2 *L.Ed.2d* at 1500. "Such a ... subordinating interest of the State must be compelling...." *Id.; see Baird v. State Bar of*

*Arizona,* 401 *U.S.* 1, 6–7, 91 *S.Ct.* 702, 705–706, 27 *L.Ed.2d* 639, 647 (1971). To determine if the invasion of the interest by the state is constitutionally permissible, the Court must balance the state interest against the extent of the deterrent effect on protected associational ties. *Buckley v. Valeo,* 424 *U.S.* at 25, 96 *S.Ct.* at 637, 46 *L.Ed.2d* at 691; *Nixon v. Admin. of General Services,* 433 *U.S.* at 467–68, 97 *S.Ct.* at 2802–03, 53 *L.Ed.2d* at 906; *Konigsberg v. State Bar of California,* 366 *U.S.* 36, 50–51, 81 *S.Ct.* 997, 1006–1007, 6 *L.Ed.2d* 105, 116–17 (1961); *NAACP v. Alabama,* 357 *U.S.* at 463, 78 *S.Ct.* at 1172, 2 *L.Ed.2d* at 1500; *Application of Marvin, Jr.,* 53 *N.J.* 147, 152–53 (1969).

■■■■ Even when the state interest is sufficiently compelling to justify the government limitation on free association, the intrusion must be accomplished in the least restrictive manner possible, *Nixon v. Admin. of General Services,* 433 *U.S.* at 467, 97 *S.Ct.* at 2802, 53 *L.Ed.2d* at 906. A significant interference by the state in protected associational interests is permitted only if the state can demonstrate both that it possesses a sufficiently important interest and that the means chosen to achieve that interest are "closely drawn to avoid unnecessary abridgment of associational freedoms." *Buckley v. Valeo,* 424 *U.S.* at 25, 96 *S.Ct.* at 637, 46 *L.Ed.2d* at 691. *Compare Baird v. State Bar of Arizona, supra,* and *In the Matter of Application of Stolar, supra, with Law Students Research Council v. Wadmond,* 401 *U.S.* 154, 91 *S.Ct.* 720, 27 *L.Ed.2d* 749 (1971).

Appellants challenge the constitutionality of conditioning licensing of casino employees on investigation of their associational ties.[14] They claim that various provisions of the Casino Control Act impermissibly infringe on the constitutional right of

---

[14]The challenged questions on the application form in use when the litigation began, PHDF–2, have all been removed from the current form, PHDF–2A. We decline to address the specific questions on the form because the issue is moot.

freedom of association. *N.J.S.A.* 5:12–89(b)(2) provides in part: [15]

> Each applicant [for a casino license] shall produce such information, documentation and assurances as may be required to establish by clear and convincing evidence the applicant's reputation for good character, honesty and integrity. Such information shall include, without limitation, data pertaining to family, habits, character, criminal and arrest record, business activities, financial affairs, and business, professional and personal associates, covering at least the 10-year period immediately preceding the filing of the application. [*See also N.J.S.A.* 5:12–84(c)]

This requirement is elucidated by the declaration of policy in the statute, *N.J.S.A.* 5:12–1(b)(7), which provides:

> Legalized casino gaming in New Jersey can attain, maintain and retain integrity, public confidence and trust, and remain compatible with the general public interest only under such a system of control and regulation as insures, so far as practicable, the exclusion from participation therein of persons with known criminal records, habits or associations, and the exclusion or removal from any positions of authority or responsibility within casino gaming operations and establishments of any persons known to be so deficient in business probity, ability or experience, either generally or with specific reference to gaming, as to create or enhance the dangers of unsound, unfair or illegal practices, methods and activities in the conduct of gaming or the carrying on of the business and financial arrangements incident thereto.

Appellants claim that these provisions invade their rights of freedom of association by allowing unlimited inquiry into an applicant's personal and business associations. They contend that the constitution requires the inquiry to be limited to the associations that are relevant to determining the applicant's fitness for the license. *See Shelton v. Tucker,* 364 *U.S.* at 488, 81 *S.Ct.* at 252, 5 *L.Ed.2d* at 237. The challenged provisions give no guidance on the types of associations that are relevant to determining an applicant's "reputation for good character, honesty, and integrity." *N.J.S.A.* 5:12–84(c) and –89(b)(2).

To evaluate appellants' claim, we must first examine the statutory provisions to determine both the ambit of the power granted to the State and whether it is rationally related to the

---

[15]The requirements in this section are applicable to casino employees in non-supervisory positions by incorporation into *N.J.S.A.* 5:12–90(b) and –91(b).

state interest in disclosure of the information. Second, we must examine the extent to which exercise of this statutory power would deter the free exercise of protected associational ties. Finally, if the permitted state actions will deter free association, we must weigh the state interest against the individual interest to determine whether the exercise of state power is justified by compelling governmental needs.

We first address the scope of the power granted to the State by the statutory licensing scheme. The contested statutory provisions give broad authority to the Commission and the Division to investigate and to compel disclosure by applicants about "business, professional and personal associates." *N.J.S.A.* 5:12–84(c), –89(b)(2). While the current form contains few questions on the applicant's associates, the broad release authorization has the potential for uncovering comprehensive information on the applicant's associates.

Nonetheless, the scope of the investigation must be rationally related to the purposes for which the information is sought, *i.e.*, determining whether the applicant is qualified for a casino employee license. The governmental purpose in investigating an applicant's associates is to exclude from licensing persons with "known criminal records, habits or associations" or who are "deficient in business probity, ability or experience." *N.J.S.A.* 5:12–1(b)(7). There can be no question that information held by banks, employers, educational institutions and government agencies on an applicant is potentially useful in determining whether she has criminal associations or is deficient in business ability. *Cf. Shelton v. Tucker*, 364 *U.S.* at 488, 81 *S.Ct.* at 255, 5 *L.Ed.*2d at 237 (holding that disclosure of every organization teachers had joined in the previous five years was not rationally related to the State's interest in determining their fitness and competency).

We therefore address the extent to which the exercise of state power just described impinges on freedom of association. The crucial factor in the cases invalidating state statutes has been

the likelihood that individuals would be deterred from freely associating with others. *See, e.g., NAACP v. Alabama,* 357 *U.S.* at 460, 78 *S.Ct.* at 1170, 2 *L.Ed.*2d at 1498; *Shelton v. Tucker,* 364 *U.S.* at 485–87, 81 *S.Ct.* at 250–51, 5 *L.Ed.*2d at 236.

One important factor in determining the deterrent effect of compelled disclosure is the presence or absence of confidentiality. *Compare Shelton v. Tucker,* 364 *U.S.* at 486–87, 81 *S.Ct.* at 251, 5 *L.Ed.*2d at 236 (invalidating a compelled disclosure under a statute which did not require that the information be kept confidential), *with Nixon v. Admin. of General Services,* 433 *U.S.* at 467–68, 97 *S.Ct.* at 2802–03, 53 *L.Ed.*2d at 906 (upholding a compelled disclosure partly on the grounds that the statute protected against improper public disclosure). The statute in this case contains a confidentiality provision, *N.J.S.A.* 5:12–74(e). This provision mitigates the likelihood that the compelled disclosure in the release authorization will deter free association. In light of the substantial governmental interest in gathering information on applicants for casino licenses, we hold that the challenged statutory provisions do not violate the constitutional freedom of association.[16]

While we uphold the constitutional validity of this broad release authorization, we note that the statutory provision that allows the Commission to compel the disclosure of information has been narrowly construed to protect the constitutional right of free association. By omitting most of the challenged questions concerning associates on the application form, the Commission acted properly in seeking to accommodate the interests of the State and the affected applicants. While the statute provides that information supplied on the applicant's associates shall be "without limitation," *N.J.S.A.* 5:12–84(c) & –89(b)(2),

---

[16]The challenged provisions are: *N.J.S.A.* 5:12–1(b)(7) (requiring exclusion from licensing of persons with criminal associations or deficient business ability); *N.J.S.A.* 5:12–84(c), –89(b)(2), –90(b), and –91(b) (compelling disclosure of business, professional, and personal associates to determine the applicant's reputation for good character, honesty and integrity).

the Constitution requires that the Commission's inquiries be rationally related to determining whether the applicant is qualified for a license. If experience in administering the Casino Control Act persuades the Commissioner that certain disclosures are not reasonably necessary to its investigation of applicants, it has an independent obligation to limit the compelled disclosure under the release authorization. The statute narrowly construed in this fashion constitutes the least intrusive means of achieving a compelling governmental purpose. *See N. J. State Chamber of Commerce v. N. J. Elec. Law Enforce. Comm'n*, 82 *N.J.* at 75. The Commission has already shown a laudable sensitivity to the legitimate interests of applicants. We are confident that it will continue to exercise its plenary regulatory powers with such considerations in mind.

## VI

### PRIVILEGE AGAINST SELF–INCRIMINATION

The Fifth Amendment prohibits the government from forcing persons to disclose information that would tend to incriminate them in future proceedings. The privilege against self-incrimination is applicable to states through the due process clause of the Fourteenth Amendment, *Malloy v. Hogan*, 378 *U.S.* 1, 84 *S.Ct.* 1489, 12 *L.Ed.*2d 653 (1964). It is firmly established as part of the common law of New Jersey and has been incorporated into our Rules of Evidence. *Evid.R.* 23, 24 and 25; *In re Ippolito*, 75 *N.J.* 435, 440 (1978); *State v. Vinegra*, 73 *N.J.* 484, 488–89 (1977).

Appellants question whether the Commission may constitutionally ask self-incriminating questions. The Fifth Amendment does not prohibit the state from asking questions. It merely prohibits the state from compelling or coercing people to answer self-incriminating questions. The privilege is personal in the sense that, when questioned by the state, one has the liberty either to waive the privilege by answering the incriminatory question or to assert the privilege and refuse to incriminate oneself. *State v. Toscano*, 13 *N.J.* 418, 423 (1953).

No one in this case has personally claimed the privilege by refusing to answer a question on the grounds that it might tend to incriminate her. Appellant Stretton filled out the application form without invoking the privilege, thereby waiving it. *State v. Toscano*, 13 *N.J.* at 423. Martin merely claimed that certain questions on the form might tend to incriminate some applicants. She did not invoke the privilege as to herself and in fact testified that an investigation of her background would reveal no criminal activity. There is no basis for a claim that defendants have compelled appellants to incriminate themselves.

Appellants' Fifth Amendment claims are therefore technically premature since none of the appellants personally claimed the privilege in response to the questions asked in the forms. Nor have any sanctions been imposed for invocation of the privilege. *See Gillhaus Beverage v. Lerner*, 78 *N.J.* 499, 509 (1979). No one has been denied a license on the basis of a personal assertion of the privilege. We expressly decline to decide whether the Commission could constitutionally deny a license application solely on the grounds that an applicant has invoked the Fifth Amendment privilege in response to one or more questions on the form.

Nevertheless, appellants claim that the application forms violate the Fifth Amendment through an implied threat that invocation of the privilege in response to a question will automatically result in denial of a license. Form PHDF–2A states:

Pursuant to Section 86(b) of the Casino Control Act, failure to answer any question completely and truthfully will result in denial of your license application.

*N.J.S.A.* 5:12–86 provides in part:

The commission shall deny a casino license to any applicant who is disqualified on the basis of any of the following criteria:

a. Failure of the applicant to prove by clear and convincing evidence that the applicant is qualified in accordance with the provisions of this act;

b. Failure of the applicant to provide information, documentation and assurances required by the act or requested by the commission, or failure of the applicant to reveal any fact material to qualification . . . .

Relying on *Gillhaus Beverage v. Lerner, supra,* appellants contend that these provisions coerce applicants to incriminate themselves by threatening to deny licenses to those who assert their constitutional privilege. In *Gillhaus,* the Director of the Division of Alcoholic Beverage Control sent a questionnaire to all licensed solicitors in the wholesale liquor industry for the purpose of investigating illegal trade practices. 78 *N.J.* at 503–04. A cover letter stated that failure to return the questionnaire with "complete and accurate answers to all questions" might result in license suspension or revocation. *Id.* at 504. The letter further implied that those who did not reveal unlawful activity in which they were engaged but were later found to be guilty of criminal conduct would be given harsher sanctions than those who disclosed the incriminating information to the agency. The Court held that the agency could not constitutionally coerce the solicitors to waive their Fifth Amendment privileges by threatening them with sanctions for asserting those privileges. *Id.* at 510.

This case is distinguishable from *Gillhaus* on a number of grounds. First, the questionnaire in that case had been sent by the government agency to a limited number of known recipients who were directed to fill it out and return it to the agency. The agency would know exactly who filled out the questionnaire and who did not. The respondents in *Gillhaus* had no real choice since failure to return it would single them out for investigation. In this case, casino license applicants ask the government for the application forms and have the choice of filling out the application or declining to do so. After appellant Stretton decided to fill out the application, she was investigated by the Division and then licensed by the Commission. Since Middlesworth has declined to fill out an application form, she has not been subject to an investigation. *See N.J.S.A.* 5:12–76(b)(1). Thus the extent of coercion by the government is far less in this case.

Second, the letter sent to the licensees in *Gillhaus* threatened not only suspension or revocation of licenses but implied that criminal sanctions would be imposed for failure to confess to

self-incriminating information. 78 *N.J.* at 505. The relevant portion of PHDF–2A contains no such threat.

Third, the questions asked in *Gillhaus* were distributed as part of an investigation into illegal activity. They were asked for the purpose of determining the extent of unlawful practices in the liquor business in the State. *Id.* at 504. Since the respondents were already licensed, the State would have had the burden of proving that they were involved in illegal activity to revoke their licenses. Thus, threatening to revoke or suspend licenses for failure to answer all questions completely and truthfully was a means of shifting part of this burden from the State to the regulated individuals. Instead of independently acquiring the information on illegal conduct, the agency sought to coerce the licensees to incriminate themselves by their responses.

In this case, on the other hand, the burden of proof is on the applicants to show by clear and convincing evidence that they are qualified for licenses. *N.J.S.A.* 5:12–86(a); *N.J.A.C.* 19:41–7.1, –7.2, –7.3. Although the denial of a license may, in some circumstances, be just as coercive an economic sanction as revocation of a license, the State has not tried to shift the burden of proving lack of illegal conduct on the applicants. The Commission has merely informed applicants that they will not be issued licenses if they fail to furnish the Commission with information necessary to establish their qualifications.

 We conclude that the notification in the casino license application form is included for the benefit of applicants and merely informs them that they have the burden of proving that they are qualified for licenses by answering the questions on the form. It does not unconstitutionally coerce applicants to waive their privilege against self-incrimination.

## VII

## WAIVER OF LIABILITY

 Appellants argue that the waiver of liability in the application form, required by *N.J.S.A.* 5:12–80(b), deprives them

of a potential statutory right against the State under the Tort Claims Act, *N.J.S.A.* 59:1–1 to 12–3. This contention misconstrues both the waiver and the Tort Claims Act. The waiver on the current form states:

> Pursuant to Section 80 of the Casino Control Act, an applicant or licensee waives any liability of the State of New Jersey and its instrumentalities and agents, for any damages resulting from any disclosure or publication in any manner, other than a willfully unlawful disclosure or publication.

The applicant is not being forced to give up any statutory rights by signing the waiver. This language merely notifies the applicant that the Casino Control Act grants sovereign immunity to the Commission and the Division for any disclosures of confidential information other than willfully unlawful disclosures.

The Tort Claims Act provides that "[e]xcept as otherwise provided by this act, a public entity is not liable for an injury . . ." *N.J.S.A.* 59:2–1(a). It further provides that "[a]ny liability of a public entity established by this act is subject to *any immunity of the public entity. . .*" *N.J.S.A.* 59:2–1(b) (emphasis added). Appellants claim a right against the State for reckless or intentional disclosures of confidential information gathered in investigating the applicant under *N.J.S.A.* 59:2–5. That statute grants immunity to certain public entities for injuries caused by the issuance or denial of a license. However, any alleged ambiguity in *N.J.S.A.* 59:2–5 is irrelevant since the Casino Control Act itself grants complete immunity to the Commission and the Division for anything but a willfully unlawful disclosure. *N.J.S.A.* 5:12–80(b).[17]

Since the Tort Claims Act states that *any* immunity of a public entity prevails over any liability, *N.J.S.A.* 59:2–1(b), the

---

[17]*N.J.S.A.* 5:12–80(b) provides in part:

> All applicants and licensees shall waive liability as to the State of New Jersey, and its instrumentalities and agents, for any damages resulting from any disclosure or publication in any manner, other than a willfully unlawful disclosure or publication, of any material or information acquired during inquiries, investigations or hearings.

immunity granted by the Casino Control Act is dispositive. Thus appellants have been deprived of no statutory rights by the notification on the application form that the State is immune from liability for most disclosures of confidential information acquired during investigation of an applicant or licensee.

## CONCLUSION

As elaborated in this opinion, we uphold the constitutionality of the challenged sections of the Casino Control Act and the application forms promulgated under *N.J.A.C.* 19:41–7.14. We also hold that the Commission may require applicants to sign the release authorization as long as it promulgates regulations as promptly as possible to ensure that the confidential materials in government hands are not publicly disseminated.

Finally, we note that the Casino Control Commission has properly sought to accommodate the needs of the State in regulating casino gambling and the private interests of casino licensees in being free from unreasonable intrusions into their private lives. If, in the course of the administration of the act, the Division or the Commission determines that the broad release authorization is not reasonably necessary to enforce the statute, it should be narrowed to reflect that finding. While the State has broad power under the statute to protect the public through regulation of casino gambling, such power should be used sensitively and wisely.

The decision of the Casino Control Commission is affirmed and modified in accord with this opinion.

*For affirmance and modification*—Justices PASHMAN, CLIFFORD, SCHREIBER, HANDLER, POLLOCK and O'HERN—6.

*For reversal*—None.

APPENDIX

# PERSONAL HISTORY DISCLOSURE FORM 2A

NEW JERSEY CASINO CONTROL COMMISSION

338

[redacted]

**COMPLETING THIS FORM:**

—BEFORE ANSWERING ANY QUESTIONS ON THIS FORM READ THE ENTIRE FORM CAREFULLY.

—YOU MUST MAKE AN APPOINTMENT WITH THE DIVISION OF GAMING ENFORCEMENT LOCATED IN THE ARCADE BUILDING, TENNESSEE AVENUE AND THE BOARDWALK IN ATLANTIC CITY TO BE FINGER-PRINTED. YOU MUST HAVE THIS FORM WITH YOU.

—ALL ENTRIES ON THIS FORM, EXCEPT SIGNATURES, MUST BE TYPED OR BLOCK PRINTED IN BLACK INK. IF APPLICATION IS NOT LEGIBLE, IT WILL NOT BE ACCEPTED.

—IF YOU NEED ADDITIONAL SPACE TO ANSWER ANY QUESTION(S), USE THE BLANK PAGE PROVIDED NEAR THE END OF THIS FORM. IF YOU USE THIS ADDITIONAL SPACE, BE SURE TO INDICATE THE NUMBER OF THE QUESTION WHICH YOU ARE ANSWERING.

—ALL NOTICES REGARDING YOUR APPLICATION WILL BE SENT TO THE ADDRESS WHICH YOU PROVIDE ON THIS FORM. YOU MUST IMMEDIATELY NOTIFY THE CASINO CONTROL COMMISSION AND THE DIVISION OF GAMING ENFORCEMENT OF ANY CHANGE OF ADDRESS.

—INSTRUCTIONS: READ EVERY QUESTION CAREFULLY PRIOR TO ANSWERING ANY. ANSWER EVERY QUESTION COMPLETELY. DO NOT LEAVE ANY BLANK SPACES. IF A QUESTION DOES NOT APPLY TO YOU INDICATE "DOES NOT APPLY" IN RESPONSE TO THAT QUESTION. IF THERE IS NOTHING TO DISCLOSE AS TO A PARTICULAR QUESTION, STATE "NONE" IN RESPONSE TO THAT QUESTION.

**BE SURE TO:**

—ATTACH A RECENT PHOTOGRAPH (WITHIN THE PAST YEAR) OF YOURSELF IN THE SPACE PROVIDED ON PAGE 6. PRINT YOUR NAME ON THE FRONT OF THE PHOTOGRAPH.

—SIGN BOTH THE AFFIDAVIT OF TRUTH AND THE RELEASE AUTHORIZATION FORM ON PAGES 21 AND 22 IN THE PRESENCE OF A NOTARY PUBLIC AND HAVE YOUR SIGNATURES NOTARIZED.

—INITIAL EACH PAGE OF THIS FORM IN THE SPACE PROVIDED.

—ATTACH TO THIS FORM A COPY OF YOUR BIRTH CERTIFICATE. IF A BIRTH CERTIFICATE IS NOT AVAILABLE, ONE OF THE FOLLOWING WILL BE ACCEPTED:

 A. CERTIFICATE OF BAPTISM

 B. NOTARIZED STATEMENT OF BIRTH FROM THE APPLICANT CONFIRMING THE DATE AND PLACE OF BIRTH.

 C. NATURALIZATION PAPERS

 D. A COPY OF A LETTER FROM THE APPLICANT TO THE APPROPRIATE GOVERNMENT AGENCY REQUESTING A BIRTH CERTIFICATE. LETTER MUST SHOW BOTH THE NAME AND ADDRESS OF THE AGENCY FROM WHICH THE BIRTH CERTIFICATE IS REQUESTED.

Date: _____

Initials _____

1

FILING OF THIS FORM WITH THE CASINO CONTROL COMMISSION

-SUBMIT AN ORIGINAL AND ONE (1) COPY OF THIS FORM TO:
 NEW JERSEY CASINO CONTROL COMMISSION
 EMPLOYEE LICENSE BUREAU
 ARCADE BUILDING
 TENNESSEE AVENUE & BOARDWALK
 ATLANTIC CITY, NEW JERSEY 08401

—THE COPY MUST BE EITHER A PHOTO- OR CARBON-COPY. IF THE COPY OF THIS FORM AND THE ATTACHED PHOTOGRAPH ARE NOT CLEAR, THE APPLICATION *WILL NOT BE ACCEPTED.*

—SUBMIT WITH THIS FORM YOUR CHECK OR MONEY ORDER (NO CASH) TO COVER YOUR APPLICATION FEE. THE AMOUNT OF YOUR APPLICATION FEE IS INDICATED ON PAGE 4. APPLICATION FEES ARE NONREFUNDABLE. ONCE FILED, AN APPLICATION MAY NOT BE WITHDRAWN WITHOUT THE PERMISSION OF THE CASINO CONTROL COMMISSION.

—MAKE YOUR CHECK OR MONEY ORDER PAYABLE TO:

 "CASINO CONTROL FUND"

BEFORE YOU SUBMIT THIS FORM TO THE CASINO CONTROL COMMISSION, BE SURE THAT:

—ALL ATTACHMENTS REQUIRED IN THIS FORM ARE INCLUDED BOTH IN THE ORIGINAL AND COPY.

—YOU HAVE BEEN FINGERPRINTED BY THE DIVISION OF GAMING ENFORCEMENT AND AN IDENTIFICATION NUMBER IS STAMPED ON THE FRONT PAGE OF THIS FORM.

—STATEMENT OF TRUTH AND RELEASE AUTHORIZATION FORM ARE NOTARIZED ON THE ORIGINAL APPLICATION. THE COPY NEED NOT BE NOTARIZED AGAIN.

—EVERY QUESTION HAS BEEN ANSWERED COMPLETELY.

—YOU RETAIN A COMPLETED COPY OF THIS FORM FOR YOUR OWN RECORDS.

Initials _____

2

**340**

IMPORTANT NOTICES

1. PURSUANT TO SECTION 86(b) OF THE CASINO CONTROL ACT, FAILURE TO ANSWER ANY QUESTION COMPLETELY AND TRUTHFULLY WILL RESULT IN DENIAL OF YOUR LICENSE APPLICATION.

2. PURSUANT TO SECTIONS 79(a) (6) AND 80 OF THE CASINO CONTROL ACT, ANY PERSON WHO APPLIES FOR AND OBTAINS A LICENSE FROM THE COMMISSION IS REQUIRED TO SUBMIT TO WARRANTLESS SEARCHES WHEN PRESENT IN A LICENSED CASINO HOTEL FACILITY.

3. PURSUANT TO SECTION 74 OF THE CASINO CONTROL ACT, INFORMATION SUPPLIED TO THE COMMISSION AND DIVISION OF GAMING ENFORCEMENT OR OTHERWISE OBTAINED BY EITHER OF THEM IS CONFIDENTIAL AND SHALL NOT BE REVEALED EXCEPT IN THE COURSE OF THE NECESSARY ADMINISTRATION OF THE CASINO CONTROL ACT, OR UPON THE LAWFUL ORDER OF A COURT OF COMPETENT JURISDICTION, OR WITH THE APPROVAL OF THE ATTORNEY GENERAL, TO A DULY AUTHORIZED LAW ENFORCEMENT AGENCY. NEVERTHELESS, PURSUANT TO SECTION 80 OF THE CASINO CONTROL ACT, AN APPLICANT OR LICENSEE WAIVES ANY LIABILITY OF THE STATE OF NEW JERSEY AND ITS INSTRUMENTALITIES AND AGENTS, FOR ANY DAMAGES RESULTING FROM ANY DISCLOSURE OR PUBLICATION IN ANY MANNER, OTHER THAN A WILLFULLY UNLAWFUL DISCLOSURE OR PUBLICATION.

Initials _____

3

## PERSONAL HISTORY DISCLOSURE FROM – 2A

| OFFICIAL USE ONLY |
|---|

| 1. CCC | 2. CCC | 3. DGE |
|---|---|---|

PLEASE PRINT OR TYPE THE ANSWERS TO THE FOLLOWING QUESTIONS IN THE SPACES PROVIDED

| NAME | (LAST) | (FIRST) | (MIDDLE) |
|---|---|---|---|

| ADDRESS. (NUMBER AND STREET) | (CITY) | (STATE) | (ZIP CODE) |
|---|---|---|---|

| DATE OF BIRTH· (MO) (DAY) (YEAR) | MAIDEN NAME: | HEIGHT (FT–IN) | WEIGHT. (LBS) |
|---|---|---|---|

### PLEASE CHECK OR COMPLETE APPROPRIATE SPACE

**HAIR COLOR·**
____(BK) BLACK
____(BR) BROWN
____(BD) BLOND
____(RD) RED
____(GY) GRAY
____(WH) WHITE
____(BA) BALD

**EYE COLOR.**
____(BK) BLACK
____(BR) BROWN
____(HZ) HAZEL
____(BL) BLUE
____(GY) GRAY
____(GR) GREEN

**SEX:·**
____(M) MALE
____(F) FEMALE

ALIAS OR NICKNAME

**RACE.·**
____(C) CAUCASIAN
____(B) BLACK
____(H) HISPANIC
____(O) OTHER

**HOW LONG HAVE YOU LIVED AT YOUR CURRENT ADDRESS?**
____ YEARS ____ MONTH

**HOW LONG HAVE YOU LIVED IN NEW JERSEY?**
____ YEARS ____ MONTHS

**COUNTY IN WHICH YOU RESIDED ONE YEAR AGO·**
____(A) ATLANTIC ____(L) MIDDLESEX
____(B) BERGEN ____(M) MONMOUTH
____(C) BURLINGTON ____(N) MORRIS
____(D) CAMDEN ____(O) OCEAN
____(E) CAPE MAY ____(P) PASSAIC
____(F) CUMBERLAND ____(Q) SALEM
____(G) ESSEX ____(R) SOMERSET
____(H) GLOUCESTER ____(S) SUSSEX
____(I) HUDSON ____(T) UNION
____(J) HUNTERDON ____(U) WARREN
____(K) MERCER ____(Z) OUT OF STATE

**COUNTY IN WHICH YOU PRESENTLY RESIDE:**
____(A) ATLANTIC ____(L) MIDDLESEX
____(B) BERGEN ____(M) MONMOUTH
____(C) BURLINGTON ____(N) MORRIS
____(D) CAMDEN ____(O) OCEAN
____(E) CAPE MAY ____(P) PASSAIC
____(F) CUMBERLAND ____(Q) SALEM
____(G) ESSEX ____(R) SOMERSET
____(H) GLOUCESTER ____(S) SUSSEX
____(I) HUDSON ____(T) UNION
____(J) HUNTERDON ____(U) WARREN
____(K) MERCER ____(Z) OUT OF STATE

### PLEASE CHECK THE APPROPRIATE SPACE FOR POSITION REQUESTED

**CATEGORY I**
**GAMING RELATED EXPERIENTIAL**
**APPLICATION–$275.00**
**RENEWAL (3 YRS) $225.00**
____ 92400 BLACKJACK FLOORPERSON
____ 92100 ROULETTE FLOORPERSON
____ 92200 CRAPS FLOORPERSON
____ 92050 BACCARAT FLOORPERSON
____ 92003 BOXPERSON
____ 82400 BLACKJACK DEALER
____ 82100 ROULETTE DEALER
____ 82200 CRAPS DEALER
____ 82050 BACCARAT DEALER
____ 92991 SLOT MECHANIC-ELECTRO
____ 92992 SLOT MECHANIC-ELECTRONIC
____ 92011 SURVEILLANCE
____ 92004 ACCOUNTANT
____ 92012 AUDITOR
____ 92010 SLOT ATTENDANT SUPERVISOR

**GAMING RELATED-NON EXPERIENTIAL**
____ 02001 COUNT ROOM EMPLOYEE
____ 02001 CASINO HOST
____ 02001 EDP EMPLOYEE
____ 02001 SLOT ATTENDANT
____ 02001 SECURITY EMPLOYEE
____ 02001 CASINO TELLER

**CATEGORY II**
**NON-GAMING RELATED**
**APPLICATION–$195.00**
**RENEWAL (3 YRS) $180.00**
____ 02002 ALCOHOLIC BEVERAGE EMPLOYEE
____ 02002 MAINTENANCE & CLEANING
____ 02002 CASINO SECRETARIAL EMPLOYEE
____ 02002 ADMINISTRATIVE ASSISTANT

**CATEGORY III**
**GAMING SCHOOL EMPLOYEE**
**APPLICATION–$220.00**
**RENEWAL (3YRS) $180.00**
____ 96400 BLACKJACK INSTRUCTOR
____ 96100 ROULETTE INSTRUCTOR
____ 96200 CRAPS INSTRUCTOR
____ 96050 BACCARAT INSTRUCTOR
____ 96991 SLOT MECHANIC-ELECTRO
____ 96992 SLOT MECHANIC-ELECTRONIC
____ 06002 ADMINISTRATIVE EMPLOYEE
____ 05001 INSTRUCTOR CASINO OPERATIONS

·THESE QUESTIONS ARE BEING ASKED FOR COMPLIANCE WITH FEDERAL AFFIRMATIVE ACTION AND EQUAL EMPLOYMENT OPPORTUNITY GUIDELINES. YOUR RESPONSE IS OPTIONAL.

4 INITIALS _____

**342**

ATTACH A COPY OF YOUR BIRTH CERTIFICATE (OR, IF NECESSARY, AN ACCEPTABLE SUBSTITUTE AS DE-
SCRIBED IN THE INSTRUCTIONS ON PAGE 1) TO THIS PAGE.

Initials _____

5

 

PERSONAL HISTORY DISCLOSURE FORM – 2A

1. HAVE YOU BEEN KNOWN BY ANY NAME OR NAMES OTHER THAN LISTED ON PAGE 4? IF YES, LIST THE ADDITIONAL NAMES BELOW AND SPECIFY DATES OF USE FOR EACH. _____

2. STATE YOUR CURRENT MARITAL STATUS (SINGLE, MARRIED, JUDICIALLY SEPARATED, DIVORCED). Circle One

3. GIVE THE NAME OF ANY PRESENT SPOUSE. _____

4. LIST ALL FORMER SPOUSES. _____

_____

PASTE A RECENT (WITHIN THE

PAST YEAR) PHOTOGRAPH HERE.

PRINT YOUR NAME ON THE FRONT

OF THE PHOTOGRAPH BEFORE

ATTACHING IT.

Initials _____

6

**344** 

5. COMPLETE THE FOLLOWING TABLE AS TO ALL MOTOR VEHICLES CURRENTLY REGISTERED TO YOU OR YOUR SPOUSE.

| YEAR | MAKE & MODEL | LICENSE NUMBER & STATE OF REGISTRY | REGISTERED OWNER | EXPIRATION DATE OF REGISTRATION |
|------|--------------|-----------------------------------|------------------|--------------------------------|
| | | | | |
| | | | | |
| | | | | |

6. LIST ALL CURRENT MOTOR VEHICLE DRIVER'S LICENSES ISSUED TO YOU BY THIS STATE OR ANY OTHER JURISDICTION BY COMPLETING THE FOLLOWING:

| DATE ISSUED | LICENSE NUMBER | TYPE OF LICENSE | JURISDICTION ISSUING LICENSE | EXPIRATION DATE OF LICENSE |
|-------------|----------------|-----------------|------------------------------|---------------------------|
| | | | | |
| | | | | |
| | | | | |

Initials _____

7

7. BEGINNING WITH YOUR CURRENT RESIDENCE (S) AND WORKING BACKWARDS, PROVIDE THE FOLLOWING INFOR-MATION WITH RESPECT TO EACH PLACE WHERE YOU HAVE LIVED DURING THE PAST (5) YEARS.

| DATES | | | | ADDRESS (NO., STREET, APT., CITY) STATE & ZIP CODE | TELEPHONE NUMBER |
| From | | To | | | |
| Month | Year | Month | Year | | |
| | | | | | |

Initials _____

8

8. WHAT IS THE TELEPHONE NUMBER AT YOUR PRESENT PLACE OF EMPLOYMENT?

AREA CODE: _____ NUMBER: _____

9. HAVE YOU EVER BEFORE APPLIED TO THE NEW JERSEY CASINO CONTROL COMMISSION FOR ANY LICENSE, PER-
MIT, APPROVAL OR REGISTRATION? _____YES _____NO

IF YES, COMPLETE THE FOLLOWING TABLE:

| TYPE OF LICENSE, PERMIT, APPROVAL OR REGISTRATION PREVIOUSLY APPLIED FOR | DATE APPLICATION WAS FILED | DISPOSITION (GRANTED, PENDING, DENIED) | IF ISSUED LICENSE(S) GIVE LICENSE NUMBER(S) |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

10. HAVE YOU EVER APPLIED IN ANY JURISDICTION FOR A LICENSE, PERMIT OR OTHER AUTHORIZATION TO PARTI-
CIPATE IN A LAWFUL GAMBLING OPERATION (INCLUDING CASINO GAMING, HORSE RACING, DOG RACING, PARI-
MUTUEL OPERATION, LOTTERY, SPORTS BETTING, ETC.)? _____YES _____NO
IF YES, COMPLETE THE FOLLOWING TABLE:

| TYPE OF GAMBLING OPERATION | POSITION SOUGHT OR HELD | LICENSING AGENCY (INCLUDING STATE, COUNTY OR MUNICIPALITY) | DISPOSITION GRANTED, DENIED PENDING | IF ISSUED LICENSE(S) GIVE LICENSE NUMBER(S) |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |

Initials _____

9

11. HAVE YOU EVER HAD ANY LICENSE, PERMIT OR CERTIFICATION DENIED, SUSPENDED OR REVOKED BY A GOVERNMENTAL AGENCY IN NEW JERSEY OR ANYWHERE ELSE? (DO NOT INCLUDE DRIVER'S LICENSE). IF YES, COMPLETE THE FOLLOWING TABLE:

_____YES_____NO

| TYPE OF LICENSE, PERMIT, CERTIFICATE | NAME & ADDRESS OF GOVERNMENTAL AGENCY | DATE OF DENIAL, SUSPENSION, REVOCATION | REASON (S) FOR DENIAL, SUSPENSION REVOCATION |
|---|---|---|---|
| | | | |

12. WITHIN THE PAST TEN (10) YEARS, HAVE YOU HELD AN OWNERSHIP INTEREST IN ANY BUSINESSES? (DO NOT INCLUDE PUBLICLY TRADED CORPORATIONS IN WHICH YOU OWNED STOCK.) _____ YES _____ NO

IF YES, BEGINNING WITH THE MOST RECENT AND WORKING BACKWARDS, LIST THE NAMES AND ADDRESSES OF ALL BUSINESSES IN WHICH YOU HAVE HELD AN OWNERSHIP INTEREST.

| DATE | | | | NAME & ADDRESS OF BUSINESS | % INTEREST HELD BY YOU | NAMES OF OTHER OWNERS |
|---|---|---|---|---|---|---|
| From | | To | | | | |
| Month | Year | Month | Year | | | |
| | | | | | | |

Initials _____

10

**348**

13. HAVE YOU PERSONALLY OR HAS ANY BUSINESS ENTITY IN WHICH YOU HELD AN OWNERSHIP INTEREST (OTHER THAN OWNERSHIP OF STOCK IN A PUBLICLY TRADED CORPORATION) OR IN WHICH YOU SERVED AS AN OFFICER OR DIRECTOR EVER BEEN ADJUDICATED A BANKRUPT OR FILED A PETITION FOR ANY TYPE OF BANKRUPTCY OR INSOLVENCY, UNDER ANY BANKRUPTCY OR INSOLVENCY LAW? _____YES _____NO

IF YES, COMPLETE THE FOLLOWING CHART:

| DATE FILED | DOCKET NUMBER | NAME & ADDRESS OF COURT | NAME & ADDRESS OF FILING PARTY | NAME & ADDRESS OF TRUSTEE |
|---|---|---|---|---|
| | | | | |

Initials _____

11

14. PROVIDE THE INFORMATION LISTED BELOW AS TO EACH PLACE IN WHICH YOU HAVE BEEN EMPLOYED FOR THE PAST 10 YEARS. BEGIN WITH YOUR PRESENT JOB AND WORK BACKWARDS. GIVE DATES OF ANY UNEMPLOYMENT BETWEEN JOBS IN PROPER SEQUENCE. INCLUDE ALL PART-TIME AND FULL-TIME EMPLOYMENT AND ANY MILITARY SERVICE. NOTE BY MEANS OF AN ASTERISK (*) ANY GAMING-RELATED EMPLOYMENT (SUCH AS CASINO GAMING, HORSE OR DOG RACING, PARI-MUTUEL OPERATION, LOTTERY SPORTS BETTING, ETC.).

| DATE | | | | NAME AND ADDRESS OF EMPLOYER (NO., STREET, CITY, STATE ZIP CODE) | POSITION AND DESCRIPTION OF DUTIES | FIRST AND LAST NAME SUPERVISOR | REASON FOR LEAVING |
|---|---|---|---|---|---|---|---|
| From | | To | | | | | |
| Month | Year | Month | Year | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

Initials _____

350

14. (CONT)

| DATE | | | | NAME AND ADDRESS OF EMPLOYER (NO., STREET, CITY, STATE ZIP CODE) | POSITION AND DESCRIPTION OF DUTIES | FIRST AND LAST NAME SUPERVISOR | REASON FOR LEAVING |
|---|---|---|---|---|---|---|---|
| From | | Tq | | | | | |
| Month | Year | Month | Year | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

13 Initials _____

15. BEGINNING WITH SECONDARY (HIGH SCHOOL) EDUCATION, PROVIDE THE INFORMATION LISTED BELOW WITH RESPECT TO EACH SCHOOL, COLLEGE, VOCATIONAL OR OTHER EMPLOYMENT TRAINING PROGRAM WHICH YOU HAVE ATTENDED. BE SURE TO INCLUDE PARTICIPATION IN CERTIFIED NEW JERSEY CASINO GAMING TRAINING COURSES.

| DATES | | | | TYPE (EDUCATION, TRAINING, JOB, OTHER) (DESCRIBE) | NAME AND ADDRESS OF SCHOOL TRAINING PROGRAM, ETC. | DESCRIPTION OF TRAINING PROGRAM OR EXPERIENCE (COURSES, ETC.) | LIST ANY DEGREE OR CERTIFICATION ATTAINED |
|---|---|---|---|---|---|---|---|
| From | | To | | | | | |
| Mo | Yr | Mo | Yr | | | | |
| | | | | | | | |

Initials _____

14

16. FOR THE PURPOSE OF THIS QUESTION, THE WORD "ARREST" INCLUDES ANY DETAINING, HOLDING, OR TAKING INTO CUSTODY BY ANY POLICE OR OTHER LAW ENFORCEMENT AUTHORITIES IN ORDER TO ANSWER FOR THE ALLEGED PERFORMANCE OF ANY "OFFENSE" IN THIS OR ANY OTHER STATE OR FOREIGN COUNTY; THE WORD "CHARGE" INCLUDES ANY INDICTMENT, COMPLAINT, INFORMATION, SUMMONS, OR OTHER NOTICE OF THE ALLEGED COMMISSION OF ANY "OFFENSE" IN THIS OR ANY OTHER STATE OR FOREIGN COUNTRY; AND THE WORD "OFFENSE" INCLUDES ALL HIGH MISDEMEANORS, FELONIES, MISDEMEANORS, DISORDERLY PERSONS OFFENSES AND JUVENILE VIOLATIONS.

HAVE YOU EVER BEEN ARRESTED OR CHARGED, <u>EVEN IF NOT CONVICTED,</u> WITH ANY FELONY, CRIME, MISDEMEANOR, DISORDERLY PERSONS OFFENSE, JUVENILE OFFENSE OR OTHER OFFENSE (OTHER THAN A TRAFFIC VIOLATION) IN NEW JERSEY OR ANYWHERE ELSE?

IF YES, COMPLETE THE FOLLOWING CHART: _____YES _____NO

| NATURE OF CHARGE OR ARREST | NAME AND ADDRESS OF GOVERNMENT AGENCY OR COURT INVOLVED | DISPOSITION (CONVICTED, ACQUITTED, DISMISSED, PENDING ETC.) | DATE OF DISPOSITION | SENTENCE |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |

NOTE: YOU NEED NOT DISCLOSE ANY ARREST OR CHARGE WHICH HAS BEEN THE SUBJECT OF A LAWFUL COURT ORDER OR EXPUNGEMENT OR SEALING IF SUCH ORDER ENTITLES YOU TO ANSWER "NO" TO SUCH INQUIRY.

Initials _____

17. HAVE YOU EVER BEEN CALLED TO TESTIFY BEFORE, OR HAVE YOU EVER BEEN THE SUBJECT OF AN INVESTIGATION CONDUCTED BY A LEGISLATIVE INVESTIGATORY BODY, GRAND JURY OR OTHER OFFICIAL INVESTIGATORY BODY OF ANY STATE OR OF THE UNITED STATES WHEN SUCH BODY IS ENGAGED IN THE INVESTIGATION OF ANY CRIMINAL ACTIVITY? _____ YES _____ NO

IF YES, COMPLETE THE FOLLOWING CHART:

| NAME AND ADDRESS OF INVESTIGATORY AGENCY | NATURE OF INVESTIGATION | APPROXIMATE TIME PERIOD OF INVESTIGATION |
|---|---|---|
| | | |

Initials _____

16

354

[redacted]

18. HAVE YOU EVER BEEN SUED OR NAMED AS A DEFENDANT OR RESPONDENT (INCLUDE MATRIMONIAL MATTERS, NEGLIGENCE MATTERS, AUTO ACCIDENT MATTERS, CONTRACT MATTERS, COLLECTION MATTERS, DEBT MATTERS, ETC.) IN A LAW SUIT? _____ YES _____ NO

IF YES, COMPLETE THE FOLLOWING CHART:

| DATE FILED | NAME & ADDRESS OF COURT | DOCKET NUMBER | OTHER PARTIES TO SUIT | NATURE OF SUIT | DISPOSITION | DATE OF DISPOSITION |
|---|---|---|---|---|---|---|
| | | | | | | |

19. DO YOU HAVE ANY BANK ACCOUNTS OR SAFE DEPOSIT BOXES IN YOUR NAME? _____ YES _____ NO

DO YOU HAVE ACCESS TO THE FUNDS IN ANY OTHER BANK ACCOUNTS OR SAFE DEPOSIT BOXES? _____ YES _____ NO

IF YES TO EITHER QUESTION, COMPLETE THE FOLLOWING CHART·

| NAME & ADDRESS OF BANK | NAME (S) ON THE ACCOUNT OR SAFE DEPOSIT BOX | TYPE OF ACCOUNT (SAVINGS, CHECKING, ETC.) | ACCOUNT NO. OR SAFE DEPOSIT BOX NO. |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

Initials _____

18

**356**

20. HAVE YOU EVER SERVED IN A MILITARY ORGANIZATION OF THE UNITED STATES OR BEEN AN ACTIVE OR INACTIVE MEMBER OF THE RESERVE FORCES OF THE UNITED STATES? _____ YES _____ NO
IF YES, PROVIDE THE INFORMATION LISTED BELOW.

BRANCH OF
SERVICE _____

HIGHEST
RANK HELD _____

PERIOD(S) OF ACTIVE SERVICE:

From _____ To _____ From _____ To _____

From _____ To _____ From _____ To _____

21. WHAT IS THE TYPE OF YOUR DISCHARGE OR SEPARATION FROM MILITARY SERVICE? (HONORABLE, DIS-HONORABLE, HONORABLE CONDITIONS, MEDICAL ETC.)?

_____

22. WERE YOU EVER COURT MARTIALED, TRIED ON CHARGES, OR THE SUBJECT OF A SUMMARY COURT, DECK COURT, CAPTAIN'S MAST, COMPANY PUNISHMENT, OR THE SUBJECT OF ANY OTHER DISCIPLINARY ACTION WHILE IN MILITARY SERVICE? _____ YES _____ NO
IF YES, GIVE DETAILS OF THE CHARGES AND THEIR DISPOSITION.

NOTE: ATTACH TO THIS FORM A COPY OR YOUR MILITARY RECORD (DD214).

Initials _____

19

USE THIS PAGE FOR ADDITIONAL INFORMATION. BE SURE TO INDICATE THE NUMBER OF THE QUESTION YOU ARE ANSWERING.

Initials _____

**358**

## STATEMENT OF TRUTH

STATE OF :
 : SS

COUNTY OF :

_____, being duly sworn according to law deposes and says:
 (NAME OF APPLICANT)

1. I am the applicant who is submitting this application form

2. I personally supplied the information contained in this form.

3. I swear (or affirm) that the information contained in this form is true to the best of my knowledge and belief.

DATED:_____ _____ (LEGAL SIGNATURE)
 (SIGNATURE OF APPLICANT)

Subscribed and sworn to before

me on this day of 198

_____ _____
NOTARY PUBLIC STATE

Initials _____

21

### RELEASE AUTHORIZATION

To All Courts, Probation Departments, Selective Service Boards, Employers, Educational Institutions, Banks, Financial and Other Such Institutions, And All Governmental Agencies — federal, state and local, without exception, both foreign and domestic.

I have authorized the New Jersey Casino Control Commission and the New Jersey Division of Gaming Enforcement to conduct a full investigation into my background and activities.

Therefore, you are hereby authorized to release any and all information pertaining to me, documentary or otherwise, as requested by any employee or agent of the Division of Gaming Enforcement or the Casino Control Commission, provided that he or she certifies to you that I have an application pending before the Casino Control Commission or that I am presently a licensee, registrant or person required to be qualified under the provisions of the Casino Control Act.

This authorization shall supercede and countermand any prior request or authorization to the contrary.

A photostatic copy of this authorization will be considered as effective and valid as the original.

DATED: _____ _____ (LEGAL SIGNATURE)
(SIGNATURE OF APPLICANT)

Subscribed and sworn to before

me on this _____ day of _____ 198 __ .

_____ _____
NOTARY PUBLIC STATE

Initials _____

22

**360** 

PUBLIC INFORMATION FILING

The Casino Control Act requires the following information to be kept on file for public inspection. Please only provide the specific information requested below.

NAME: _____
LAST (MAIDEN) FIRST MIDDLE

DATE OF BIRTH _____/_____/_____
 MONTH DAY YEAR

POSITION APPLIED FOR: _____

 _____
 APPLICANT'S INITIALS

DO NOT WRITE BELOW THIS LINE (FOR OFFICE USE ONLY)

23