242 N.J. Super. 623 (1990)
577 A.2d 1292
IN RE PETITION OF MICHAEL J. NIGRIS TO SEAL CERTAIN CONFIDENTIAL MATERIAL IN ACCORDANCE WITH N.J.S.A. 5:12-74(E).
Superior Court of New Jersey, Appellate Division.
Argued May 29, 1990.
Decided July 17, 1990.
*625 Before Judges J.H. COLEMAN, BRODY and SKILLMAN.
David J. Satz argued the cause for appellant (Saiber, Schlesinger, Satz & Goldstein, attorneys; David M. Satz, Jr. and Bruce I. Goldstein, of counsel; David J. Satz and Philip Touitou, on the brief).
Steven M. Ingis, Assistant Counsel, argued the cause for respondent New Jersey Casino Control Commission (Robert J. Genatt, General Counsel, attorney; Steven M. Ingis, on the brief).
David Arrajj, Deputy Attorney General, argued the cause for respondent Division of Gaming Enforcement (Robert J. Del Tufo, Attorney General, attorney; Anthony J. Parrillo, Assistant Attorney General, of counsel; David Arrajj, on the brief).
A brief was filed by Dilworth, Paxson, Kalish & Kauffman, attorneys for amicus curiae, The Press of Atlantic City (Nelson C. Johnson, Barbara Sardella, Scott N. Silver and Virginia L. Flick, on the brief).
The opinion of the court was delivered by SKILLMAN, J.A.D.
The primary issue presented by this appeal is whether section 74(e) of the Casino Control Act (the Act), N.J.S.A. 5:12-1 et seq., requires the Casino Control Commission (the Commission) to seal any exhibit admitted into evidence at a public hearing which contains "information and data pertaining to an applicant's criminal record, family and background."
*626 The issue arose in the context of an application for a casino license filed by Griffin Company following its acquisition of and merger with Resorts International, Inc. In August 1988, Mervyn Griffin (Griffin), who holds a substantial interest in Griffin Company, was informed by an investment banker involved in financing the Resorts acquisition that he had learned that Michael J. Nigris (Nigris), the then President, Treasurer and Chief Executive Officer of Griffin Company, had questionable business associations which could have a negative impact upon the Commission's consideration of Griffin Company's pending casino application. Mr. Griffin then retained a private investigating firm, which provided an oral report to him confirming the adverse information about Nigris. Upon receipt of this oral report in August 1988, Griffin removed Nigris from any involvement in his casino operations but continued to employ him until late May or early June 1989 in connection with his non-casino businesses. On October 25, 1988, Mr. Griffin received a written summary prepared by the private investigating firm which contained more detailed information relating to Nigris' questionable business associations.
Prior to the commencement of the hearing on Griffin Company's application, Nigris became aware that the Division of Gaming Enforcement (the Division) intended to introduce evidence relating to his background and business relationships. This evidence included the memorandum submitted to Griffin in October 1988 summarizing the results of the private investigation of Nigris, a report prepared by the Division regarding Nigris' qualifications, a summary of an interview of Nigris conducted by the Division's investigators and a transcript of a sworn interview of Nigris. The primary import of these exhibits was that Nigris had close business associations with Ernest Barbella (reputed to be "a member of La Cosa Nostra"), Herbert S. Cannon (a disbarred lawyer with two bank fraud convictions and numerous securities laws convictions), and Peter Aiello ("a frequent securities law violator"). This information was pertinent to whether Mr. Griffin's continued employment *627 of Nigris from August 1988 until late May or early June 1989 reflected adversely upon Griffin's "good character, honesty and integrity" and thus was grounds under N.J.S.A. 5:12-84(c) for denial of a casino license.
Nigris' counsel sent two letters to the Commission requesting it to seal these exhibits in order to prevent their public disclosure. After reviewing the documents and hearing arguments of counsel, the Commission denied Nigris' application.
Nigris then appealed to this court. A single judge temporarily stayed the unsealing of the documents but permitted reference to the documents in counsel's summations and in the Commission's final decision.
The Commission issued a final decision on September 27, 1989 granting Griffin Company's application for a plenary casino license. A full panel of this court entered an order on October 10, 1989, staying the unsealing of the documents pending a final decision on Nigris' appeal. The Supreme Court subsequently denied the Division's motion to vacate the stay.
This appeal turns primarily on the interpretation of section 74(e) (N.J.S.A. 5:12-74(e)), which provides:
All information and data pertaining to an applicant's criminal record, family, and background furnished to or obtained by the commission from any source shall be considered confidential and shall be withheld in whole or in part, except that any information shall be released upon the lawful order of a court of competent jurisdiction or, with the approval of the Attorney General, to a duly authorized law enforcement agency.
Nigris' basic argument is that section 74(e) requires the Commission to seal and thus prevent public disclosure of any exhibit admitted into evidence at a public hearing which contains information pertaining to an applicant's criminal record, family or background unless a court enters an order permitting release of the document.
To determine whether this was the intent of section 74(e), it is appropriate to consider "not only the particular statute in question, but also the entire legislative scheme of which it is a part." Kimmelman v. Henkels & McCoy, Inc., 108 N.J. 123, *628 129, 527 A.2d 1368 (1987). Moreover, section 74(e) must be "read in a reasonable manner to include only those situations legitimately contemplated by the Legislature." Council of New Jersey State College Locals, NJSFT-AFT/AFL-CIO v. State Board of Higher Education, 91 N.J. 18, 36, 449 A.2d 1244 (1982). Therefore, a court will not "permit the intent of the Legislature to be subverted by language which, read literally, appears to contravene that which the Legislature actually intended." In re Boardwalk Regency Casino License Application, 180 N.J. Super. 324, 344, 434 A.2d 1111 (App.Div. 1981), mod. 90 N.J. 361, 447 A.2d 1335 (1982), app. dism. 459 U.S. 1081, 103 S.Ct. 562, 74 L.Ed.2d 927 (1982).
One of the basic objectives of the Act, as declared in N.J.S.A. 5:12-1(b)(6), is to promote "public confidence and trust in the credibility and integrity of the regulatory process and of casino operations." To the same effect, N.J.S.A. 5:12-1(b)(13) states that the provisions of the Act are "designed to engender and maintain public confidence and trust in the regulation of the licensed enterprises." The Supreme Court of New Jersey also has taken note of the fact that one of the essential objectives of the Act is to sustain "public confidence and trust in the honesty and integrity of the State's regulatory machinery." Knight v. Margate, 86 N.J. 374, 392, 431 A.2d 833 (1981); see also Greenberg v. Kimmelman, 99 N.J. 552, 494 A.2d 294 (1985); In re Martin, 90 N.J. 295, 319, 447 A.2d 1290 (1982); Uston v. Resorts International Hotel, Inc., 89 N.J. 163, 169, 445 A.2d 370 (1982). Thus, the question is whether Nigris' interpretation of section 74(e) can be reconciled with the underlying legislative goal of promoting public confidence in the casino industry and the state's regulation of that industry.
At the outset, it is important to note the full ramifications of Nigris' interpretation of section 74(e). The confidentiality requirement of section 74(e) is not limited to documents but rather applies to all "information and data" furnished to or obtained by the Commission regardless of its form. Thus, Nigris' interpretation of section 74(e) would require not only the *629 sealing of documents introduced into evidence but also the closing of any hearing in which testimony regarding "confidential information" is presented, the impounding of transcripts of such testimony and, indeed, even the impounding of any final decision of the Commission which refers to such confidential information. Moreover, it is extremely common for evidence regarding the "background" of applicants, including their alleged business relationships with members of organized crime or other unsavory persons, to be presented at casino licensing hearings. In fact, such evidence has been the primary focus of several of the Commission's most significant hearings involving the licensing of casinos and their officers, directors and employees. See, e.g., In re Boardwalk Regency Casino License Application, supra, 180 N.J. Super. at 334-339, 434 A.2d 1111; In re Application of Atlantic City Showboat, 10 N.J.A.R. 608 (1988); In re Doumani, 11 N.J.A.R. 407, 416-424 (1984); In re Application of Resorts International Hotel, Inc. for a Casino License, 10 N.J.A.R. 244, 265-282 (1979); see also In re Matter of Hotel & Restaurant Employees & Bartenders International Union Local 54, 203 N.J. Super. 297, 496 A.2d 1111 (App. Div. 1985), certif. den. 102 N.J. 352, 508 A.2d 223 (1985), cert. den. 475 U.S. 1085, 106 S.Ct. 1467, 89 L.Ed.2d 723 (1986). Therefore, the acceptance of Nigris' interpretation of section 74(e) would compel the sealing of exhibits and the closing of hearings to the public in some of the most significant casino licensing proceedings conducted by the Commission.
We also note that section 74(e) does not expressly deal with the conduct of contested cases. Instead, this subject is addressed in sections 107 through 110 of the Act, N.J.S.A. 5:12-107 to 110. N.J.S.A. 5:12-107(a) indicates that hearings before the Commission are subject to the provisions of the Administrative Procedure Act (APA), N.J.S.A. 52:14B-1 et seq., and N.J.S.A. 5:12-107(a)(4) states that "[e]ach party to a hearing shall have the right to call and examine witnesses" and "to introduce exhibits relevant to the issue of the case, including the transcript of testimony at any investigative hearing conducted by or *630 on behalf of the commission." However, the sections of the Act dealing with hearings in contested cases are silent as to the sealing of exhibits and closing of hearings to the public. Therefore, the Legislature undoubtedly intended casino licensing hearings to be subject in this regard to the same rules as govern other hearings in contested cases.
Pursuant to N.J.S.A. 52:14F-5(e) and (f), the Director of the Office of Administrative Law has adopted a rule which provides that:
In considering whether to close a hearing and/or seal a record, the judge shall consider the requirements of due process of law, other constitutional and statutory standards and matters of public policy. The judge shall consider the need to protect against unwarranted disclosure of sensitive financial information or trade secrets, to protect parties or witnesses from undue embarrassment or deprivations of privacy, or to promote or protect other equally important rights or interests. [N.J.A.C. 1:1-14.1(b)].
Since licensing hearings before the Commission are "contested cases," see N.J.S.A. 52:14B-2(b), and thus subject to the rules which govern quasi-judicial hearings under the APA, N.J.A.C. 1:1-14.1(b) would govern any application to seal exhibits or close a licensing hearing before the Commission.
Viewing section 74(e) within this overall statutory framework, we are persuaded that the Legislature did not intend to require the closing of the Commission's hearings in contested cases or the sealing of exhibits admitted into evidence. The Legislature was undoubtedly aware that the Commission would receive and routinely process thousands of applications for various licenses without conducting hearings. Such applications frequently contain highly personal information concerning an applicant's family and background, the revelation of which could embarrass or harm the applicant without serving any overriding public interest. Thus, the Legislature included section 74(e) in the Act in order to prevent the Commission from revealing information relating to an applicant's criminal record, family and background in the course of the ordinary administration of the Act. However, the balancing of private and public interests is significantly different in contested adjudicative *631 hearings relating to the issuance of casino licenses. While the privacy interests of applicants are dominant in the routine administrative processing of applications for employee and other licenses required by the Act, the public interest in preserving public confidence in the integrity of the regulatory process by allowing public access to the evidence on which the Commission bases its decisions is paramount in contested adjudicatory hearings.
The licensing of casinos and casino employees is similar in this respect to the administration of various other laws which require the submission of reports and other documents containing personal information which administrators are directed to keep confidential. For example, the Director of the Division of Taxation is required to keep tax returns and other tax records confidential pursuant to N.J.S.A. 54:50-8. However, this does not mean that a tax court judge hearing a case relating to a question of tax liability must close the trial or seal a tax return which is admitted into evidence. See also 8 Wigmore, Evidence § 2377 at 781 (McNaughton rev. 1961) ("secrecy statutes [which] make confidential in varying degrees sundry matters required by law to be recorded or to be reported orally or in writing to various administrative officials ... [i]n most instances ... [bar] only extrajudicial disclosure of the report by administrative officials; no evidentiary privilege is involved.") (emphasis in original).
Although the Commission is not compelled by section 74(e) to automatically grant an application to seal an exhibit or close a hearing where information is presented relating to an applicant's criminal record, family or background, it is required in passing on such an application under N.J.A.C. 1:1-14.1(b) to conscientiously balance the privacy interests of the applicant and the public interest in full public disclosure of evidence pertinent to casino licensure. In fact, the Commission's opinion in this case expressly acknowledges that it has a responsibility to "strike a proper balance" between the "fundamental interests" *632 in protecting "the confidentiality of the vast amount of highly personal information it receives" and fostering "public confidence in the casino industry and the regulatory process."
Moreover, we are satisfied that the Commission did not abuse its discretion in denying Nigris' motion to seal the exhibits relating to his background and business relationships. This information, especially the report summarizing the results of the private investigation of Nigris submitted to Griffin in October 1988, was highly relevant to one of the Commission's primary concerns as to Griffin Company's suitability for licensure: that is, whether Mr. Griffin should have immediately severed all ties with Nigris when he first received information that Nigris had business relationships with a reputed member of organized crime and others who were convicted fraud artists and securities swindlers. Since the protection of New Jersey's gaming industry against infiltration by organized crime and other undesirable persons is one of the fundamental objectives of the Act, see, e.g., In re Martin, supra, 90 N.J. at 320, 447 A.2d 1290, the Commission properly concluded that public confidence in the integrity of the regulatory process would be undermined if it withheld evidence relating to this subject from public scrutiny.
Finally, we reject Nigris' argument that the sealing of exhibits relating to his background and business relationships is compelled because public disclosure would violate the constitutional right of privacy recognized in In re Martin, supra, 90 N.J. at 316-325, 447 A.2d 1290. In Martin the Court rejected a constitutional challenge to the statutory and regulatory provisions requiring applicants for casino employee licenses to answer various personal questions relating to subjects such as business interests, criminal records and marital status and to authorize release of confidential records held by institutions such as banks, employers, and educational institutions. The Court also held that "in order for the release authorization to pass constitutional muster, the State must undertake adequate *633 precautions to safeguard the material against disclosure to the public once it is in government hands." Id. at 322, 447 A.2d 1290. However, Martin involved solely the routine processing and retention of uncontested applications for casino employee licenses rather than the conduct of public hearings relating to contested applications for casino licenses. Thus, the Court specifically pointed to "the absence of any substantial government interest in public disclosure of the information" as a primary basis for requiring the State to take precautions against disclosure. Id. at 323, 447 A.2d 1290. In contrast, there is a substantial governmental interest in preserving public confidence in the integrity of the regulatory process by allowing public access to information on which the Commission decides contested cases which clearly outweighs whatever privacy interests a party in the position of Nigris may have in preventing disclosure. Indeed, the right of public access to evidence presented in an adjudicatory hearing may be of constitutional dimension. Cf. New Jersey Division of Youth and Family Services v. J.B., 120 N.J. 112, 127, 576 A.2d 261 (1990) ("There is an expectation based in history and the first amendment ... that civil trials and proceedings will be open to the public ... [which] may be overcome [only] when an important state interest is at stake."). Therefore, we conclude that public disclosure of the information introduced into evidence at the hearing on Griffin Company's application for a casino license relating to Nigris' questionable business associations will not violate his constitutional right of privacy.
Affirmed.