277 N.J. Super. 433 (1994)
649 A.2d 1302
IN RE PETITION OF THE ATLANTIC CITY PRESS REQUESTING CERTAIN FILES OF THE CASINO CONTROL COMMISSION.
Superior Court of New Jersey, Appellate Division.
Argued October 5, 1994.
Decided November 21, 1994.
*435 Before Judges KING, D'ANNUNZIO and EICHEN.
Gary A. Ehrlich, Deputy Attorney General, argued the cause for appellant, Division of Gaming Enforcement (Deborah T. Poritz, Attorney General of New Jersey, attorney; Alvin G. Shpeen, Assistant Attorney General, of counsel, Mr. Ehrlich, on the brief).
Nelson C. Johnson argued the cause for respondent, Atlantic City Press (Mr. Johnson, on the brief).
Dennis Daly, Assistant General Counsel, argued the cause for respondent, Casino Control Commission (John R. Zimmerman, General Counsel, attorney; Mr. Daly, on the brief).
The opinion of the court was delivered by KING, P.J.A.D.
In this case we resolve a dispute between two agencies, the Casino Control Commission (Commission) and the Division of Gaming Enforcement of the Attorney General's Office (Division) on a question of law involving the casino industry. The Atlantic *436 City Press (Press) sparked the dispute by a request for customarily confidential information from the Commission about the Division's investigatory reports of applicants for licenses and registrations. The Commission decided to provide the Press with the confidential information. The Division opposed the Commission's decision and appeals. We agree with the Division and reverse.

I
On April 29, 1994 the Press filed a petition with the Commission seeking to obtain the Division's investigatory reports and information on a dozen individuals and businesses involved in the casino industry. The Division opposed the request. On June 8, 1994 the Commission held a public hearing with briefs and oral arguments. On June 22 the Commission issued an opinion granting the Press' petition. The Commission decided to disclose the Division's investigatory reports with redaction of any confidential data unrelated to the Press' declared interest in "Asian organized crime."
The Division filed this appeal from the Commission's decision and moved for a stay. N.J.S.A. 5:12-110(a) of the Casino Control Act (Act) specifically provides for judicial review where the Division is aggrieved by a decision of the Commission. See also N.J.S.A. 5:12-76(b)(4); State (Division) v. Gonzalez, 273 N.J. Super. 239, 641 A.2d 1060 (App.Div. 1994), appeal pending. We granted a stay of the Commission's decision and order and we accelerated this appeal.

II
The Act, N.J.S.A. 5:12-1 to -210, comprehensively regulates the casino industry and seeks to achieve many objectives. Among them are promotion of "public confidence and trust in the credibility and integrity of the regulatory process and of casino operations" and ensuring that the industry will not be infiltrated by organized crime. N.J.S.A. 5:12-1(b)(6), (7). To implement these policies, the Act provides a two-tiered regulatory system. The Commission has regulatory authority over the licensing and registration *437 of persons operating in the casino industry. N.J.S.A. 5:12-64. The Division of Gaming Enforcement, in the Department of Law and Public Safety of the Office of the Attorney General of New Jersey, investigates applicants for licensing and registration and provides this information to the Commission. N.J.S.A. 5:12-76.
In order to provide the Division with background material necessary to its investigation, all applicants are required to disclose extensive personal information. Applicants also must execute an unqualified release of information authorization for the records of institutions such as courts, banks, employers, government agencies, and educational institutions.
In 1992, the United States Senate Committee on Governmental Affairs, Permanent Subcommittee on Investigations, issued a series of reports on Asian organized crime. An exhibit to one of the reports contained a chart entitled: "Asian Organized Crime  Influence in the Asian Entertainment Industry." The chart contained the names of individuals and businesses, dividing them into two categories: 1) identified Asian crime figures and 2) entertainment industry participants not known as involved in organized crime. The chart demonstrated purported relationships between the individuals and businesses by connecting lines between them.
Another Senate Subcommittee exhibit demonstrated that not all of the names on the chart were members of organized crime groups but that all had direct ties and associations with organized crime figures. The exhibit stated that "[e]ach individual identified has been named by two or more independent law enforcement agencies as a member or associate of an organized crime group" and added that additional sources "filed under seal with the Subcommittee" were used for many of the names. The Senate's report also discussed those listed on the chart, identifying some as having past or present connections to the Atlantic City casino industry.
On April 29, 1994 Kevin Shelly, described on the Press' letterhead as a "staff writer," petitioned the Commission for copies of *438 Division reports on twelve individuals and businesses identified in the Senate report. On May 13, 1994 Shelly amended his request for reports, and sought disclosure of "whether or not your files reflect any information indicating that these people or companies have any ties or associations with Asian organized crime figures or organizations." At the June 8 hearing the Press reverted to the original request for the Division's investigative reports.
At the June 8 Commission meeting, in an attempt to determine the nature of the Press' request, the Commission discussed the whereabouts and licensing-registration status of the individuals listed on the petition. Although the Commission and Shelly seemed somewhat uncertain about many of those listed, Commissioner Larue stated that "so far as we know, it's only eleven that we haven't released, because one is public information, and it could be even as few as four or five, because not all of them have gone through a procedure with us."
In opposing public disclosure of its reports, the Division argued that the State Constitution, the Casino Control Act, and our case law forbid such disclosure. The Division also argued that because of the explicit language of the Act, neither the common-law right of press access nor the Right-to-Know Law, N.J.S.A. 47:1A-1 to -4, applied.
Insofar as we can determine, no notice has been given to the targeted persons or businesses. None have sought to intervene in the proceeding. N.J.S.A. 5:12-74(f) requires such notice if information is released to anyone other than a law enforcement agency.
In its June 22, 1994 opinion the Commission granted the Press' petition for these reasons:
Where, as here, public trust and confidence in the integrity of the regulatory process is fairly called into question by virtue of inherently credible allegations of organized crime involvement ... disclosure of confidential materials may be appropriate. Such disclosures must ... reveal only such confidential information as is relevant to the inquiry ... [and] will be restricted to information contained in Division reports bearing upon allegations that the persons and companies on the list were members or associates of members of Asian organized crime. Any other information which is entitled to confidential treatment will be redacted.

*439 ... [W]e intend to disclose the most recent Division report on any persons and companies ... who are or have been applicants for licensure. If... the person or company is a "registrant," ... we intend to disclose any complaints the Division may have filed.

III
The pertinent section for our discussion of the Act is titled "Minutes and Records," N.J.S.A. 5:12-74. This section deals with records made in a variety of contexts, including public proceedings, decisions of the Commission, confidential information, notice of release of information to affected individuals, and information not considered confidential. Subsection N.J.S.A. 5:12-74(e) specifically addresses the issue of confidential information relating to an applicant who wishes to engage in regulated activity.
All information and data pertaining to an applicant's criminal record, family, and background furnished to or obtained by the commission from any source shall be considered confidential and shall be withheld in whole or in part, except that any information shall be released upon the lawful order of a court of competent jurisdiction or, with the approval of the Attorney General, to a duly authorized law enforcement agency.
[N.J.S.A. 5:12-74(e).]
Prior to 1987, this subsection stated that "information ... shall be considered confidential and may be withheld." L. 1977, c. 110, § 74 (emphasis added). In 1987 the Legislature amended subsection (e) by substituting shall for may. L. 1987, c. 410, § 5, effective January 14, 1988. This amendment responded to our Supreme Court's decision in In re Martin, 90 N.J. 295, 447 A.2d 1290 (1982). In Martin applicants for casino licenses challenged the broad informational demands of the Act as violations of their right of freedom from unreasonable governmental searches and of the right to privacy. Id. at 310, 316, 447 A.2d 1290.
In upholding the constitutionality of the Act in this respect, the Court said:
In light of the extraordinarily broad nature of the release authorization and the potential intimacy of the private information contained in these documents, we hold that in order for the release authorization to pass constitutional muster, the State must undertake adequate precautions to safeguard the material against disclosure to the public once it is in government hands ... We therefore hold that the state *440 has the constitutional power to condition license application on the applicants' signing the release authorization only if it has instituted adequate safeguards against public disclosure of confidential materials it obtains.
[In re Martin, 90 N.J. at 322, 447 A.2d 1290.]
The Court also required the Commission to issue regulations to ensure the confidentiality of the information sought and obtained. Id. at 336, 447 A.2d 1290. The Commission responded with N.J.A.C. 19:40-4.1 to -4.9. Also, as noted, under subsection N.J.S.A. 5:12-74(f) notice must be given to applicants, licensees or registrants if information is released to any party except a law enforcement agency.
In N.J.S.A. 5:12-74(h) the Legislature clearly addressed its concern with the confidentiality of information, this time by making only certain specific information public. Subsection h specifically lists items such as gross revenue from certain games, amounts of patrons' checks accepted by licensees, taxes paid, premises and improvements costs, and financial statements as public information. The list is preceded by language stating that this information "to be reported periodically to the commission ... shall not be considered confidential and shall be made available for public inspection." N.J.S.A. 5:12-74(h). Additionally, N.J.S.A. 5:12-74(a) makes records of proceedings held at public meetings open for public inspection and N.J.S.A. 5:12-74(b) makes applicant lists and actions taken with respect to those applicants open to public inspection. These subsections demonstrate the care with which the Legislature addressed the confidentiality afforded different types of information under the Commission's control.
Finally, N.J.S.A. 5:12-74(d)[1] states that, with the exception of the information listed in subsection h, all other information relating *441 to internal controls or the revenue or earnings of applicants, licensees or registrants "shall be considered to be confidential and shall not be revealed in whole or in part except in the course of the necessary administration of this act, or upon the lawful order of a court of competent jurisdiction, or with the approval of the Attorney General, to a duly authorized law enforcement agency." We are not here concerned with the first clause in subsection 74(e) permitting information "released upon the lawful order of a court of competent jurisdiction." N.J.S.A. 5:12-74(e). We are solely concerned with the second clause requiring the withholding of applicant background information "except ... with the approval of the Attorney General, to a duly authorized law enforcement agency." No original application has been made by the Press to a court of competent jurisdiction and we will not speculate today about the scope of that statutory remedy. We are only concerned with the Commission's desire here to release otherwise "confidential" information to the media, not to a law enforcement agency, and without the approval of the Division and the Attorney General. The Commission stated in its opinion that while some portions of the Division reports might not be considered confidential, "we construe the request for Division reports to be a request for information that is confidential under section 74(e)." The agency's pertinent regulation, N.J.A.C. 19:40-4.1,[2] defines "confidential information," mirroring the language of the Act.
We are keenly aware that the wording of N.J.S.A. 5:12-74(d) differs somewhat from N.J.S.A. 5:12-74(e). Subsection 74(d) permits release of certain confidential information "in the course of *442 the necessary administration of the act." N.J.S.A. 5:12-74(d); see Canadian Imperial Bank of Commerce v. Boardwalk Regency Corp. and Desert Place, Inc., 108 F.R.D. 737 (D.N.J. 1986). Section 74(e) contains no such general wording. Notably, the regulations as promulgated and relied upon by the Commission do not make this distinction. N.J.A.C. 19:40-4.8(a) provides, in pertinent part, that "[c]onfidential information ... shall not be released or disclosed in whole or in part to any person, except: 1. In the course of the necessary administration of the act."[3]
This attempted broadening of the discretionary powers of the Commission by lifting the "in the course of the necessary administration of the act" language from subsection 74(d) and, in effect, transposing it to subsection 74(e) appears to conflict with the *443 Supreme Court's statement in In re Martin in 1982. In that case, the Court stated that:
Moreover, the ... Commission interpreted Section 74(e) as mandatory, allowing disclosure only under the circumstances specified in the statute. In light of the constitutional requirements of confidentiality and the absence of any substantial governmental interest in public disclosure of the information, we affirm the Commission's holding that the State must keep the acquired information confidential, subject only to the specific exceptions noted in N.J.S.A. 5:12-74(e) itself.
[In re Martin, 90 N.J. at 323, 447 A.2d 1290.]
In its opinion in the case before us, the Commission also recognized this language used by the Court in Martin but concluded that the phrase "in the absence of any substantial government interest in public disclosure" served to distinguish Martin from this case and permits the Commission, as a matter of public policy, to ascertain whether there exists a compelling interest in public disclosure. The Commission then proceeded to find such a compelling interest in the "paramount purpose" of ensuring the public trust in the regulatory process, one of the primary policies underlying the statute. N.J.S.A. 5:12-1(b)(7). The Commission also stressed that applicants, licensees, and registrants do not have an inviolable right of privacy, noting that exceptions do exist under subsections 74(d) and 74(e), N.J.A.C. 19:40-4.8(a), and as provided by this court in In re Petition of Nigris, 242 N.J. Super. 623, 577 A.2d 1292 (App.Div. 1990).
In Nigris, a license applicant appealed the Commission's refusal to seal exhibits containing confidential information which were admitted into evidence at a public licensing hearing. Id. at 625, 577 A.2d 1292. The confidential material contained information relating to the criminal record, family and background of the applicant. Noting that the case turned on the interpretation of section 74(e) of the Act, we stated that "it is appropriate to consider `not only the particular statute in question, but also the entire legislative scheme of which it is a part.'" Id. at 627, 577 A.2d 1292. In Nigris, we also recognized that the legislative intent must not be sabotaged by a strict, literal reading of the language of the Act and acknowledged the policy of promoting *444 public confidence in the regulation of the industry. Id. at 628, 577 A.2d 1292.
In Nigris we thought that an unduly strict interpretation of section 74(e) would require "not only the sealing of documents introduced into evidence but also the closing of any hearing in which testimony regarding `confidential information' is presented, the impounding of transcripts of such testimony and, indeed, even the impounding of any final decision of the Commission which refers to such confidential information." Id. at 628-29, 577 A.2d 1292. Such a drastic result would mandate closing important casino licensing hearings to the public. We found that the Legislature did not foresee or intend the closing of these hearings in contested cases. Instead, we perceived that the legislative intent under 74(e) was "to prevent the Commission from revealing information relating to an applicant's criminal record, family and background in the course of the ordinary administration of the Act." Id. at 630, 577 A.2d 1292 (emphasis added). This was the same interpretation used by the Commission in promulgating N.J.A.C. 19:40-4.8(a).
We also recognized that the balancing of interests is quite different in contested hearings than in the routine processing of applications. Id. at 630-31, 577 A.2d 1292. Also contributing to the result in Nigris were the Act's provisions regarding contested licensing cases, N.J.S.A. 5:12-107 to 110, demonstrating that these hearings must be governed by the Administrative Procedure Act (APA). Id. at 629-30, 577 A.2d 1292. Addressing the APA provision governing the closing of hearings or sealing of records in contested cases, we found that N.J.A.C. 1:1-14.1(b) requires the Commission, in passing on an application to close the hearing, to "conscientiously balance the privacy interests of the applicant and the public interest in full public disclosure of evidence pertinent to casino licensure." Id. at 631, 577 A.2d 1292.
Moreover, recognizing that one of the primary objectives of the Act is to protect the industry from organized crime infiltration, we stated that withholding evidence as to whether the applicant *445 Nigris had alleged business relationships with organized crime members could undermine public confidence in the regulatory licensing process. Id. at 632, 577 A.2d 1292. Responding to the petitioner's claim that his right of privacy would be violated if the exhibits were not sealed, we concluded that Martin's scope involved routine processing of uncontested applicants, not the conduct of public hearings. Id. at 633, 577 A.2d 1292. Additionally, we stated that the Court in Martin:
specifically pointed to `the absence of any substantial government interest in public disclosure of the information' as a primary basis for requiring the State to take precautions against disclosure. In contrast, there is a substantial governmental interest in preserving public confidence in the integrity of the regulatory process by allowing public access to information on which the Commission decides contested cases.... Indeed, the right of public access to evidence presented in an adjudicatory hearing may be of constitutional dimension.
[Ibid.]
The case before us does not involve a contested hearing with this "constitutional dimension" of public access. Nor does it simply involve Martin's envisioned "routine administration processing of applications," a reality recognized by the Commission in its opinion. The Martin Court, in discussing the confidentiality strand of privacy, referred to the balancing test used to resolve conflicts between governmental needs for information and an individual's right of confidentiality. Martin, supra, 90 N.J. at 318, 447 A.2d 1290. The Court agreed that "even if the governmental purpose is legitimate and substantial ... the invasion of the fundamental right of privacy must be minimized by utilizing the narrowest means which can be designed to achieve the public purpose." Id. (quoting Lehrhaupt v. Flynn, 140 N.J. Super. 250, 262, 264, 356 A.2d 35 (App.Div. 1976), aff'd o.b., 75 N.J. 459, 383 A.2d 428 (1978). The present language of the Casino Control Act clearly contemplates such a narrow means.
The expressed policy and clear text of the Act, N.J.S.A. 5:12-1(b)(8) states that licenses and registrations "shall be deemed a revocable privilege conditioned upon the proper and continued qualification of the individual licensee or registrant." Additionally, N.J.S.A. 5:12-88(a), dealing with license renewal, states in subsection *446 (a) that "the commission may reopen licensing hearings at any time. In addition, the commission shall reopen licensing hearings at any time at the request of the Division." Finally, N.J.S.A. 5:12-94(d) states that "a casino hotel employee registration shall ... remain in effect unless revoked, suspended, limited, or otherwise restricted by the commission." Thus, the Act empowers the Commission and the Division to reopen hearings for those persons operating under the umbrella of the regulatory scheme to determine whether evidence exists sufficient to revoke their privileges. These hearings, per Nigris, would be open to the public and, of course, the Press. Where there are sufficient allegations of improper association by individuals operating in the industry, as could perhaps be the case with some of the names on which the Press requested information, such public hearings would encourage the public trust and confidence in the integrity of the regulatory process.
"Although deference is due the interpretation of a regulatory scheme by the agency charged with its enforcement, statutory interpretation is ultimately the task of the judiciary." Mortgage Bankers Ass'n v. N.J. Real Estate Comm'r, 102 N.J. 176, 191, 506 A.2d 733 (1986). Indeed, as here, where two agencies appear equally charged with the interpretation and enforcement of a regulatory statute, we owe no particular deference to the legal interpretation urged by either agency. We decide here in favor of the "bright line" rule urged by the Division in construing subsection 74(e). The plain text of the statute supports this interpretation. Information and data pertaining to an applicant's criminal record, family and background, "shall be considered confidential and shall be withheld ... except that any information shall be released ... with the approval of the Attorney General, to a duly authorized law enforcement agency." N.J.S.A. 5:12-74(e). We conclude that the Legislature has resolved the dilemma the parties pose to us in favor of confidentiality and against disclosure in the asserted "best interest" of the casino industry and its regulators.
*447 As the Commission itself recognized in its opinion, "the bright line" approach suggested by the Division has "considerable merit." And the Commission realized that "confidential information supplied by or about individuals is a pillar upon which much of the regulatory structure rests." Disclosure upon media demand surely could chill the information-gathering process that is fundamental to the efficacy of the licensing system. Moreover, all appear to agree that some of the information gathered and included in the Division's reports may be nothing more than rumor, gossip and multiple-level hearsay which requires expert evaluation before the agency relies upon it.
We reject the Commission's attempt to transpose the "in the course of the necessary administration of this act" from subsection 74(d) to subsection 74(e), with an assist from that same language in its regulation, N.J.A.C. 19:40-4.8(a)1, and create a new exception to the disclosure statute. The policy judgment on strict confidentiality of "information and data pertaining to an applicant's criminal record, family and background" has been made clear by the Legislature. This judgment may not be revised by the regulatory body.
The decision of the Commission is contrary to the statute and is reversed. The specific language of subsection 74(e) must prevail over the more general language of subsection 74(d), the agency's general regulation, or the overall statutory declaration of policy,  "public trust and confidence." N.J.S.A. 5:12-1(b)(6) and (7); State Highway Comm'r v. Dilley, 48 N.J. 383, 387, 226 A.2d 1 (1967).
We also reject the Press' claim insofar as it is based on the Right to Know Law, N.J.S.A. 47:1A-1 to -4, and the common law. Again, the more specific provision of the Casino Control Act controls over the Right to Know Law, N.J.S.A. 47:1A-2. Finally, the common-law right of access must yield to the specific declaration *448 of legislative policy in N.J.S.A. 5:12-74(e). See In re Martin, supra, 90 N.J. at 322, 447 A.2d 1290.
Reversed.
NOTES
[1] N.J.S.A. 5:12-74(d) in full states:

d. Except as provided in subsection h. of this section, all information and data required by the commission to be furnished hereunder, or which may otherwise be obtained, relative to the internal controls specified in section 99a. of this act or to the earnings or revenue of any applicant, registrant, or licensee shall be considered to be confidential and shall not be revealed in whole or in part except in the course of the necessary administration of this act, or upon the lawful order of a court of competent jurisdiction, or, with the approval of the Attorney General, to a duly authorized law enforcement agency.
[2] N.J.A.C. 19:40-4.1 states in pertinent part:

"Confidential information" means any information of data, furnished to or obtained by the Commission or Division from any source, which is considered confidential pursuant to the provisions of N.J.S.A. 5:12-74(d) and (e), or which is otherwise confidential pursuant to applicable statutory provision, judicial decision or rule of court.
[3] N.J.A.C. 19:40-4.8 states:

(a) Confidential information within the possession of the Commission or Division shall not be released or disclosed in whole or in part to any person, except:
1. In the course of the necessary administration of the act; or
2. Upon lawful order of a court of competent jurisdiction; or
3. With the approval of the Attorney General, to a duly authorized law enforcement agency; or
4. Upon presentation of proper identification, to the applicant, registrant or licensee who furnished the confidential information to the Commission or Division; or
5. Upon presentation of a duly executed and notarized release authorization by the applicant, registrant, or licensee who furnished the confidential information, to any person making a written request for specifically identified confidential information.
(b) If confidential information is released or otherwise disclosed to any person under any circumstances other than those identified in (a)3 through (5) above, written notice of such release or disclosure shall be given to any applicant, registrant or licensee affected, unless notice would otherwise imperil the integrity of casino operations in this State. To the extent known, the notice shall include:
1. The name and address of the person to whom the information was released or disclosed;
2. A description of the information released or disclosed; and
3. The date of the release or disclosure.
(c) Whenever possible, any such notice of confidential information to be released or disclosed shall be given prior to the release or disclosure.